UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

|  |  |  |
|---|---|---|
| Isobel Berry Culp,<br>David R. Culp, | . | Third Circuit: #22-1789 |
|  | . |  |
| Appellants, | . |  |
|  | . |  |
| v. | . |  |
|  | . |  |
| Commissioner of Internal<br>Revenue, | . |  |
|  | . |  |
| Appellee. | . |  |

...................................

       Transcript from the audio recording of the oral argument held March 7, 2023 at the United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania.  This transcript was produced by Writer's Cramp, Inc., certified court transcribers for the United States Court of Appeals.

BEFORE CIRCUIT JUDGES:

THE HONORABLE PATTY SHWARTZ
THE HONORABLE STEPHANOS BIBAS
THE HONORABLE THOMAS L. AMBRO


APPEARANCES:

For Appellants:               Oliver D. Roberts, Esq.
                              Jones Day
                              Ste. 500
                              2727 North Harwood Street
                              Dallas, TX 75201


For Amicus Curiae:            T. Keith Fogg, Esq.
                              Legal Services Center of
                              Harvard Law School
                              122 Boylston Street
                              Jamaica Plain, MA 02130

2

For Appellee:                    Isaac B. Rosenberg, Esq.
                                 Tax Division
                                 United States Department
                                 Of Justice
                                 950 Pennsylvania Ave., NW
                                 P.O. Box 502
                                 Washington, DC 20044

Transcribing Firm:               Writer's Cramp, Inc.
                                 1027 Betty Lane
                                 Ewing, NJ 08628
                                 609-588-8043


**Proceedings recorded by electronic sound recording, transcript
produced by transcription service.**

1      (Proceeding in progress)

2           JUDGE SHWARTZ:  -- case <u>Culp vs. Commissioner of</u>

3      <u>Internal Revenue</u>, Appellate #22-1789.

4           MR. ROBERTS:  Good morning, Your Honor.  May it

5      please the Court.  My name is Oliver Roberts and I represent

6      the Appellants, Isobel and David Culp.  I'll be addressing the

7      issue of jurisdiction under §6213(a).  I'll be speaking for

8      ten minutes, of which I'd like to reserve two of that for

9      rebuttal.

10          JUDGE SHWARTZ:  That's granted.

11          MR. ROBERTS:  Thank you.  Today's case is about two

12     retired teachers, the Culps, who worked hard, paid their taxes

13     and followed the rules.

14          JUDGE SHWARTZ:  We know the facts.  We'd like to

15     talk about the law if we could go right to the Statute.

16          MR. ROBERTS:  Yes, Your Honor, yes.  So --

17          JUDGE SHWARTZ:  If 6213 is not jurisdictional, what

18     Statute gives the Tax Court the authority to adjudicate

19     petitions challenging those as a deficiency?  What's the

20     statutory provision if it's not in 6213?

21          MR. ROBERTS:  Your Honor, we'd say 6214.

22          JUDGE SHWARTZ:  Isn't 6214 simply authority to award

23     a deficiency greater than what the IRS found?  Isn't that all

24     that 6214 does?

25          MR. ROBERTS:  Your Honor, I'd respectfully disagree.

1  The first part of 6214 does say the Tax Court shall have

2  jurisdiction to hear deficiency cases, but that's an issue if

3  the Amicus is prepared to go more in depth.  And our argument

4  does say in the alternative, even if 6213(a) does in fact

5  grant jurisdiction, nonetheless this Statute is -- the filing

6  deadline of 6213(a) is still not jurisdictional either way,

7  whichever the source the deficiency jurisdiction is.

8           So, ultimately today's case hinges on the Government's

9  ability to show that there is a clear statement that the

10  filing deadline is jurisdictional --

11           JUDGE SHWARTZ:  We --

12           MR. ROBERTS:  -- and the Government --

13           JUDGE SHWARTZ:  I think we agree that that's what

14  Boechler and the Court is telling us.  So, I'd like to ask you

15  a different question.  Did the Culps pay the taxes that were

16  at issue?

17           MR. ROBERTS:  Yes, they did.

18           JUDGE SHWARTZ:  If they paid the taxes, did they

19  seek a refund?

20           MR. ROBERTS:  Your Honor, they didn't seek a refund

21  directly.  They did seek a refund by going to the Tax Court

22  and filing in the Tax Court.

23           JUDGE SHWARTZ:  And the reason why I ask that is, if

24  they've done that, doesn't that make this count, the Notice of

25  Deficiency moot?  If they've already paid and they've taken

1   steps to seek refund, what's left of the Notice of Deficiency?

2   Isn't it moot?

3        MR. ROBERTS:  Your Honor, I would disagree, I do not

4   think it is moot at this point in time, because they sought to

5   get the refund in the Tax Court, so a predicate to getting

6   that refund and having the Tax Court issue that refund would

7   be first establishing whether there's jurisdiction under

8   6213(a).  So that's a threshold matter we first need to

9   establish and get through, and --

10       JUDGE SHWARTZ:  But 6213 deals with Notices of

11   Deficiencies, not refunds.  Refunds are a different provision,

12   correct?

13       MR. ROBERTS:  Yes, that's true.  So, how the order

14   of operations goes here is first there needs to be a

15   determination of whether that Notice of Deficiency is valid,

16   whether it's sent, then the Culps would go into the Tax Court

17   and the determination is whether the Tax Court can even hear

18   that issue.  That's where we need to decide 6213(a) and

19   whether it's jurisdictional or not.

20       JUDGE SHWARTZ:  So, the fact that they sought a

21   refund, not a consideration, we don't need to focus on that at

22   all?

23       MR. ROBERTS:  At this point in time, not

24   necessarily.  It is implicated just in the point that when the

25   Culps did go to the Tax Court, they invoked jurisdiction under

1    6512(b)(3), and that's been implicated.  But first we need to

2    make the threshold decision whether 6213(a) is jurisdictional

3    or not, because that then will get us to whether the Tax Court

4    has jurisdiction to issue that over-payment refund in

5    6512(b)(3).

6          JUDGE AMBRO:  But if the -- so let me just see if I

7    got the chain here correct.  Did they eventually file for a

8    refund after they paid the taxes?

9          MR. ROBERTS:  They did not file a refund through the

10    typical mechanisms; they went to the Tax Court for relief in

11    this situation, and the Tax Court would, theoretically, if we

12    get past this 6213(a) jurisdiction threshold issue, the Tax

13    Court would then have jurisdiction under 6512(b)(3) to issue

14    that over-payment refund.

15          JUDGE AMBRO:  So they -- in effect they paid the tax

16    and they're saying "We want a determination of what we should

17    have paid, a determination of deficiency," is that correct?

18          MR. ROBERTS:  Somewhat, Your Honor.  There is also a

19    difficulty in the procedure posture of the situation if they

20    were to seek a refund by paying and suing.  It's -- there's

21    going to be a host of implicated issues with Statute of

22    Limitations and all that type of stuff so there is the

23    potential argument that it's past that point in time.  But

24    this is all predicated --

25          JUDGE AMBRO:  That really goes back to Judge

1    Shwartz's question.  If we're past that point in time, might

2    there -- might what they suggest here be moot as to whatever

3    they get back, I guess?  What do you -- what skin do they have

4    in the game right now and what relief can be given to them?

5         MR. ROBERTS:  Yes, so the relief.  They could get

6    that over-payment refunded to them by going to the Tax Court.

7    If this Court were to rule that §6213(a) is not jurisdictional

8    and they are subject to Equitable Tolling, they'd go back to

9    the Tax Court, they'd have the ability to then have that

10   adjudicated and get a refund under 6512(b)(3).  So, that's

11   their relief in this situation.

12        JUDGE AMBRO:  So -- okay, so they're saying if 65 --

13   or 6213(a) is not jurisdictional with respect to a petition

14   for a determination -- re-determination or whatever it is of

15   deficiency, and they get -- and they have jurisdiction, and

16   they get a favorable ruling there, they won't file for a

17   refund under 6213(a) because it's specifically taken away in

18   the later sentence, but they would then be able to file in

19   Court for the refund?

20        MR. ROBERTS:  Well, that sentence does not take away

21   -- in this situation that does not take away the Court's

22   ability to issue a refund.  There is a separate --

23        JUDGE AMBRO:  Well, it says, "The Tax Court shall

24   have no jurisdiction to" {dot, dot, dot} "order any refund

25   under this subsection."

1     MR. ROBERTS:  Yes.  I then point the Court to

2  6512(b)(3), because that allows -- after a Court makes the

3  determination, that gives the Court the ability to then issue

4  a refund.  So, it does appear like it's a little bit anomalous

5  there, but if you then cite 6512(b)(3), that also gives

6  jurisdiction to the Tax Court to issue a decision that then

7  allows them to compel the IRS to then give that refund.  So,

8  that --

9     JUDGE SHWARTZ:  You mentioned Equitable Tolling.

10  Did the Culps preserve their right to argue Equitable Tolling

11  with the Tax Court?

12     MR. ROBERTS:  Yes, they did, Your Honor.  I point

13  the Court to paragraph 44 in their petition in the Tax Court,

14  because that speaks about the fact that the IRS had prevented

15  them from filing and moving forward and getting their refund,

16  so that does implicate equitable --

17     JUDGE SHWARTZ:  The IRS prevented them from filing,

18  because they didn't receive the Notice of Deficiency?  Is that

19  the factual ground?

20     MR. ROBERTS:  Well, it's their belief -- they did

21  not receive the Notice of Deficiency, nor did they receive the

22  Notice of Intent to Levy, and then they worked with the

23  taxpayer advocacy service hand-in-hand for months and months

24  and were told they were going to get this refund.

25     JUDGE SHWARTZ:  So, those would be the facts one

1   would signal that there should be some forgiveness of their

2   lateness, am I understanding correctly?

3         MR. ROBERTS:  Exactly, Your Honor.  They don't say

4   it by word, but they reference it in facts, yes.

5         JUDGE SHWARTZ:  Let me ask you about this, then.

6   What language in the Statute shows us that Congress intended

7   this deadline to be subject to Equitable Tolling?

8         MR. ROBERTS:  I would just say comprehensively.  We

9   could look at Boechler.  In that case they decided that it was

10  not jurisdictional 6330(d)(1), that it was subject to

11  Equitable Tolling, because 1) there is a presumption that non-

12  jurisdictional filing deadlines are subject to Equitable

13  Tolling.  So, that's where we start with that presumption.

14  And then looking at this whole procedure as a whole --

15  deficiencies, deficiency jurisdiction -- this is a {quote}

16  "unusually protected provision of taxpayer rights" as was

17  collection due process in Boechler.  So, looking at it as a

18  whole of the section as well as the presumption, it's up to

19  the Government here today to show why it should not be subject

20  to Equitable Tolling.

21        JUDGE SHWARTZ:  But how could we ignore some of the

22  statutory provisions within 6213 where Congress has already

23  identified circumstances where the clock would be stopped?

24        MR. ROBERTS:  Your Honor, I --

25        JUDGE SHWARTZ:  What do we do with that?

1        MR. ROBERTS:  I would point the Court to <u>Boechler</u> as

2   well.  There is a number of exceptions in <u>Boechler</u> in the

3   collection due process, 6330(d)(1), and those exceptions were

4   not sufficient to flip the presumption onto the taxpayer to

5   prove otherwise.

6        JUDGE SHWARTZ:  You said several.  Didn't <u>Boechler</u>

7   only have one?

8        MR. ROBERTS:  What was that, Your Honor?

9        JUDGE SHWARTZ:   Did <u>Boechler</u> only have one?  Or did

10  it have three?

11       MR. ROBERTS:  <u>Boechler</u>, it referred to a number of

12  them, including presidential declared disasters, taxpayers in

13  military zones, so there were some exceptions there as there

14  are some exceptions in our Statute, but the exceptions are not

15  enough to flip the presumption, which is a strong presumption

16  in <u>Irwin v. Department of Veterans Affairs</u>.

17       JUDGE SHWARTZ:  Okay.  All right.  I'll just see if

18  Judge Bibas, do you have any questions for counsel?  Judge

19  Ambro?  Okay, we'll have you back on rebuttal.

20       MR. ROBERTS:  Thank you, Your Honor.

21       MR. FOGG:  Good morning, Your Honors.  May it please

22  the Court.  My name is Keith Fogg and I'm here representing

23  the Center for Taxpayer Rights, the Amicus in this case.  My

24  goal is to talk about Equitable Tolling.  I know you've

25  already started that discussion, but to go back to the

1    deficiency discussion just for a second, it is very normal for

2    the Tax Court to issue refunds in cases where there's been an

3    overpayment, so it's not an unusual part of a Tax Court case.

4          JUDGE SHWARTZ:  Well, I'm glad you're here to talk

5    to us about an Equitable Tolling, because I have a question

6    for you and it has to do with the ramifications of declaring

7    the Statute non-jurisdictional and allowing it to be subject

8    to Equitable Tolling.  I know you folks in your briefing did

9    some arithmetic and tried to talk about the consequences, but

10   very recently the Tax Court had an issue, its budget

11   justification, as recently as the end of February.  And in it,

12   it said that 96% of the Tax Court docket is Notice of

13   Deficiency litigation.  If we were to allow this to be subject

14   to Equitable Tolling, are we foisting upon the District -- I'm

15   sorry, the Tax Court the need to evaluate every single

16   untimely petition, when it's 96% of its docket?

17         MR. FOGG:  Actually, we're relieving the Tax Court

18   of having to do that, Your Honor.  Right now they evaluate

19   every single petition, and that's why, like last week, there

20   were six cases dismissed at the end of the case when the

21   parties were submitting decision documents because the Tax

22   Court said wait a minute, we don't have jurisdiction.  We've

23   evaluated it.  One of the cases we cited in our response to

24   you on the Hallmark case involved a case where it was two

25   minutes late.  So, we --

1          JUDGE SHWARTZ:  But how are we relieving the Tax

2     Court?  Because now we'd be opening the door to anybody who

3     was two minutes late, two years late, twenty-two years late,

4     and the Tax Court is going to have to do an individualized

5     analysis of each one of those petitions to determine whether

6     the Statute should be tolled.

7          MR. FOGG:  Only if the Government raises lateness,

8     Your Honor.  So, they don't have to do it in the 25 to 30

9     thousand cases that are filed each year, they only need to do

10    it in the cases in which someone has filed late in which the

11    Government raises lateness as an issue.  So, we're projecting

12    in our numbers that there about 600 -- out of the 25 to 30

13    thousand cases filed a year, about 50 a month, or 600 a year,

14    involve late-filed petitions.  And in those late-filed

15    petitions then, the Government would raise in its answer that,

16    you know, "Mr. Fogg filed his petition two days late; he

17    should be dismissed from the Court."  Then it would be up to

18    me to respond to that and say "Here is my reason for filing

19    late."  What's happening today in those 50-a-month cases where

20    the Court, you know, determines that it's late, about three-

21    fourths of them are the Government determining that it's late

22    and one-fourth is the Tax Court determining that it's late.

23    But where the Government determines it's late, then they file

24    a Motion to Dismiss before they file their answer and the

25    Court issues an order for the other side to respond.  Only a

1   handful of cases actually respond.  So, only -- out of those,

2   you know, 50 cases, only four or five are responding and

3   saying "Here's why I was late."  So we think that the number

4   of cases that we're talking about -- so we're bringing it down

5   from, you know, 25 to 30 thousand to 600 a year.  We're

6   bringing that down to we think about 30 to 40 a year of cases

7   where people are responding and saying "I was late and I have

8   an excuse."  So, I don't think that's a very burdensome

9   number.  And --

10          JUDGE SHWARTZ:  The -- just so the record -- oh,

11   just for the benefit of the record, well, according to this

12   report, it's 34,000 deficiency petitions were filed.  I take

13   your point --

14          MR. FOGG:  Okay.

15          JUDGE SHWARTZ:  -- that you're saying not every one

16   is going to involve an application where they're untimely, not

17   every one is going to be met with a Government Motion to

18   Dismiss, and not every one is going to oppose that motion.

19          MR. FOGG:  And Your Honor, that's 34,000 cases in

20   2021, a very unusual year because of the pandemic.  So, if you

21   go to the year before it was only like 16,000 because the

22   Government shut down, and then when they caught back up.  So a

23   typical Tax Court docket at this point in time is around 25 to

24   30 thousand.  But not that that makes a big difference.

25          JUDGE SHWARTZ:  And but if we determine it's not

1  jurisdictional, will that open avenues for individuals who

2  would otherwise say, "Well, listen, the law says I -- it would

3  be a waste of my time because the Court has no power," and if

4  the three of us were to decide, well, the Court does actually

5  have power, are we opening up the flood gates to many, many

6  more petitions?

7       MR. FOGG:  And that's basically the Government's

8  argument, that the number of cases will skyrocket, and I would

9  say that's wrong.  First of all, nobody wants to file late, so

10 it's not like people are going to wait so they can have the

11 opportunity to make this argument about Equitable Tolling, so

12 that's #1.  Second of all, 75% of the people who are filing in

13 Tax Court are pro se, so they're not reading <u>Boechler</u>, they're

14 not going to read <u>Culp</u>; they're just trying to file their case

15 on time and if they miss, maybe they've got a good reason,

16 maybe they don't.  So, the 25% cases where the people are

17 represented, hopefully their lawyers are carefully reading the

18 law and timely filing, but if they missed the time, they'll

19 have a good excuse or they won't raise the excuse.  So, I

20 don't -- it's not like people are going to -- excuse me, my

21 time is up, Your Honor.

22      JUDGE SHWARTZ:  You can finish your answer.

23      MR. FOGG:  I don't think that there is going to be a

24 lot of people going back looking.  And in fact, if you look at

25 the cases that have been decided under the Court's new

1   thinking, now 20-year-old thinking, there's been cases.  So

2   eight years ago there was the <u>Volpicelli</u> case in the Ninth

3   Circuit that says wrongful levy cases are claims processing

4   rules.  There haven't been, you know, a tsunami of wrongful

5   levy cases.  Four years ago the D.C. Circuit in the <u>Myers</u> case

6   said whistleblower cases are subject to claims processing

7   rules.  No cases on Equitable Tolling under whistleblowing

8   since that four years.  <u>Boechler</u> was decided almost a year

9   ago.  There hasn't been a tsunami of CDP cases.  There just

10  aren't going to be more cases.  There's not going to be this

11  group of people who have been waiting in the wings to come

12  into Tax Court and make this argument.

13          JUDGE SHWARTZ:  Judge Ambro, do have any questions?

14  Judge Bibas?  Counsel, thank you so much for your argument.

15          MR. FOGG:  Thank you, Your Honor.

16          MR. ROSENBERG:  Good morning, Your Honors.  May it

17  please the Court.  Isaac Rosenberg for the Commissioner.  I'd

18  like to pick up where Mr. Fogg left off with respect to the

19  number of folks every year who might plausibly assert

20  Equitable Tolling.  He said it was probably 30 to 40 people a

21  year.  He also said, based on their calculations, however

22  scientific those might be, that about 600 petitions a year are

23  dismissed by the Tax Court as untimely.  The jurisdictional

24  implications here are significant because under §7459(d) a

25  dismissal on non-jurisdictional grounds will be res judicata

1    of the deficiency determined by the Secretary.  That means

2    based on the Amicus' math, 500-plus taxpayers a year under the

3    regime that they see who either purposefully or inadvertently

4    filed their petition a day, two days, three days late, or have

5    no idea of whether they can get an extension from the Court,

6    are going to be foreclosed from getting relief, for instance,

7    in bankruptcy, because --

8         JUDGE AMBRO:  Probably not too often that somebody

9    purposely misses a deadline.

10         MR. ROSENBERG:  Probably not.  And these are the

11    taxpayers that Congress had in mind and that the Court should

12    worry about.  The taxpayer who walks to the blue mailbox

13    outside their house a day late or the day that their petition

14    needs to be postmarked, not knowing it hasn't -- it's not

15    going to be picked up in time.

16         JUDGE AMBRO:  But let's go back to the -- this is a

17    6213(a) is what, a claims processing provision?  Isn't that

18    right?

19         MR. ROSENBERG:  No, Your Honor -- the deadline?

20         JUDGE AMBRO:  No, is 6213(a), the first -- is that a

21    claims processing provision?

22         MR. ROSENBERG:  No, Your Honor.  The first sentence

23    of 6213(a) says "Within 90 days" --

24         JUDGE AMBRO:  "90 days or 150 days after a Notice of

25    Deficiency authorized in 6212 is mailed, the taxpayer may file

1    a petition with the Court for a redetermination of the

2    deficiency."  In other words, "I want you to -- I think it was

3    incorrect, the deficiency, please redetermine it."

4         MR. ROSENBERG:  Correct.

5         JUDGE AMBRO:  And so that sounds like it's part of -

6    - that is typically called a claims processing provision, is

7    it not?

8         MR. ROSENBERG:  I'm not sure about typically, and

9    I'm not trying to resist you.  This Statute is unusual because

10   the jurisdictional grant to redetermine deficiencies is in the

11   very same provision that authorizes the cause of action.  So,

12   6213(a), the language that says, "may petition the Tax Court

13   for a redetermination" is the language in the Statute, at

14   least after Boechler, that gives the Tax Court its

15   jurisdiction to redetermine deficiencies based on a petition

16   challenging a Notice of Deficiency.

17        JUDGE AMBRO:  Is there an argument that what gives

18   them jurisdiction is 6214(a)?

19        MR. ROSENBERG:  No, Your Honor, it's not.  We've

20   explained in our brief why not.

21        JUDGE AMBRO:  So, you're saying there is no argument

22   at all to that effect?

23        MR. ROSENBERG:  Well, there is an argument; they've

24   made it.  The argument is incorrect.

25        JUDGE AMBRO:  Okay.

1       MR. ROSENBERG:  The language that's -- what's --

2       JUDGE SHWARTZ:  How is it under -- how is it

3  incorrect when the specific language of 6214(a) says {quote}

4  "The Tax Court shall have jurisdiction to redetermine the

5  correct amount of the deficiency?"

6       MR. ROSENBERG:  Right, there are three problems with

7  it.  The first is grammatical.  There is no comma before the

8  even if, so you can't say, full stop, "The Tax Court shall

9  have jurisdiction to redetermine the deficiency", stop; comma,

10  even if.  There is no comma separating it.  The second problem

11  is the heading of the Statute says "Jurisdiction to Determine

12  Increased Deficiencies."  That heading has been there since

13  1928, right.  This is contemporaneous to the time when

14  Congress was altering the authority of the Board of Tax

15  Appeals to determine deficiencies in excess of what the

16  Commissioner had determined in the Notice of Deficiency.  So,

17  originally, and I apologize if this is a little bit tedious as

18  far as history goes.  In 1926, with the Revenue Act of 1926,

19  there was an actual provision that gave the Board of Tax

20  Appeals jurisdiction and identified four specific substantive

21  Statutes.

22       JUDGE SHWARTZ:  Rather than talking about history,

23  if we could talk about the Statutes that govern.

24       MR. ROSENBERG:  Yes.

25       JUDGE SHWARTZ:  If it's not in 6214(a) as Judge

1    Ambro and I are asking you, where is it in 6213 that says the

2    -- that gives the Tax Court jurisdiction to review these

3    deficiency notices?

4         MR. ROSENBERG:  It's the first sentence of the

5    Statute, and --

6         JUDGE AMBRO:  And if you go later on, the talk of

7    jurisdiction is in the penultimate sentence, "The Tax Court

8    shall have no jurisdiction to enjoin any action or proceeding

9    or order any refund under this subsection unless a timely

10   petition for a redetermination of deficiency has been filed."

11   So, in other words, you have to have your -- you have to file

12   it, and then only in respect of the deficiency that is the

13   subject.  But it doesn't specifically say redetermination of

14   deficiency there is no jurisdiction.  And the Supreme Court in

15   Boechler has made it there has to be a clear statement that

16   there is no jurisdiction.  And it looks to me like one could

17   argue that this is a clear statement that for redeterminations

18   of deficiency there is jurisdiction.  So, help me -- just tell

19   me how I'm wrong.

20        MR. ROSENBERG:  Okay.  The third sentence of 6213(a)

21   grants special remedial jurisdiction for assessment and

22   collection that occurs during a blackout period between when

23   we mail the Notice of Deficiency and the deadline to file a

24   petition.  The fourth sentence strips the Tax Court of that

25   special remedial jurisdiction if the petition is not timely

1    filed.  Under <u>Boechler</u>, taxpayers could still go to a District

2    Court to get an injunction, maybe a refund for any -- anything

3    that the Government does improperly during this blackout

4    period, that's what that fourth sentence concerns.  What

5    <u>Hallmark</u> said was that language helps, doesn't establish

6    clearly but certainly helps, demonstrate that the grant of

7    jurisdiction for deficiency redeterminations is in 6213(a).

8              JUDGE BIBAS:  What's odd is, so we're supposed to

9    focus on the language here, and here, you know, several

10   sentences, 200 words are separating the relevant parts, and

11   <u>Hallmark</u> never identifies what in the Statute actually is the

12   clear statement.  It -- instead it spends most of its time on

13   a century of Tax Court case law.  But that's not a clear

14   statement in text.

15             JUDGE AMBRO:  Which has been debunked in <u>Boechler</u>.

16   I mean, you can't go back --

17             JUDGE BIBAS:  Yes.

18             JUDGE AMBRO:  -- and look at stare decisis.

19             MR. ROSENBERG:  Right.  So if we were just looking

20   at the text alone, we might -- we'd have a good argument.  We

21   might not have a clear statement, and we'd probably lose.

22             JUDGE AMBRO:  Okay.

23             MR. ROSENBERG:  Okay, under <u>Boechler</u>.

24             JUDGE AMBRO:  Right.

25             MR. ROSENBERG:  But this is not <u>Boechler</u> and this is

1    not 6330(d), and the context and the relevant historical

2    treatment are substantially different.

3            JUDGE BIBAS:  The only times the Supreme Court has

4    said "Well, all this can matter," is when its own case law,

5    maybe its own case law might have been codified.  But the Tax

6    Court treats its case law as something that Congress has

7    notice of, and I don't see the basis for allowing the Tax

8    Court's cases to substitute for a clear statement in the text.

9            MR. ROSENBERG:  Well, it's not -- Your Honor, it's

10   not just the Tax Court's cases, it's also Circuit Court cases.

11   And Congress --

12           JUDGE AMBRO:  But the Supreme Court has made it

13   clear, our cases, our Supreme Court cases.  You can't really

14   look beyond that.

15           MR. ROSENBERG:  Okay.  In 1998 when Congress passed

16   the Restructuring and Reform Act, that's the act that created

17   the CDP process which gave taxpayers a new right to challenge

18   an underlying liability in CDP if they didn't actually receive

19   a Notice of Deficiency.

20           JUDGE BIBAS:  You're talking about 6330 then?

21           MR. ROSENBERG:  Right, in 1998.  And that's the same

22   year that Congress added the last sentence of §6213(a) that

23   says if the Commissioner tells you the wrong date to petition

24   in a Notice of Deficiency, the time for filing is up until the

25   date that the Commissioner tells you in the Notice of

1    Deficiency.

2         JUDGE BIBAS:  But that is a liberalizing remedial

3    provision.  You have to -- you read a strong negative

4    inference from that?

5         MR. ROSENBERG:  If I may, Your Honor.  What Hallmark

6    said was applying the prior construction doctrine.  We can

7    look at the Conference Committee Report.  This is the best

8    legislative history there is, if the Court cares about

9    legislative history, but this is the joint committee of the

10   Senate and the House hashing out this bill.  They were clearly

11   aware of the nearly 100 year of unbroken, unwavering case law

12   treating the filing deadline as jurisdictional, and saying --

13   why they added this last sentence to 6213(a), they did it

14   because they understood the deadline was jurisdictional.

15        JUDGE BIBAS:  But that's not in the text.  I want to

16   let my colleagues talk more about this; I do want to get to

17   Equitable Tolling at some point.

18        JUDGE SHWARTZ:  Go ahead.

19        JUDGE AMBRO:  Go right ahead.

20        JUDGE BIBAS:  So, when I look at Equitable Tolling,

21   you start out with a thumb on the scales against you, right?

22   The presumption is in favor of Equitable Tolling under Irwin.

23   So, what overcomes it?  You've got two arguments here.  You've

24   got the exceptions and you've got administrability here.  So,

25   almost -- everything else is against you.  So talk to us about

1    administrability first.  You know, Brockamp involved 200

2    million tax returns and 90 million refunds.  Boechler involved

3    27 thousand notices to taxpayers and 800 cases in the Tax

4    Court.  This case is in between, it's about 2 million notices

5    of deficiency, but only about 16 thousand cases in the Tax

6    Court, and your friend on the other side gets that to, okay,

7    maybe that's 500 cases over the course of a year or something.

8    So, why should we treat this case as unadministrable when the

9    numbers -- it's in between, but it's closer to Boechler than

10   to Brockamp?

11           MR. ROSENBERG:  It's not strictly the numbers.  The

12   entire system of assessment and collection hinges on the date

13   of assessment, and the date of assessment depends entirely on

14   this period of time between when we mail a Notice of

15   Deficiency and the deadline to petition the Tax Court.  That

16   deadline has to be firm.  If it could be changed, then when we

17   can assess is going to be up in the air.  We cannot get our

18   statutory lien until we assess.  We cannot proceed with

19   collection and demand payment until we assess.

20           JUDGE AMBRO:  That's just a precondition to a

21   jurisdiction then, right?

22           MR. ROSENBERG:  I'm sorry, Your Honor?

23           JUDGE AMBRO:  It's like a precondition on your end

24   to having jurisdiction.

25           MR. ROSENBERG:  We made the argument in both

1   respects, but especially with respect to Equitable Tolling.

2   The concerns that animated <u>Brockamp</u> apply here with force.  If

3   we cannot assess -- if when we can assess is debatable, for

4   instance, a taxpayer files a late-filed petition and starts

5   Equitable Tolling and is allowed to come in 9 -- you know, 120

6   days late, we've already assessed, which means our statutory

7   lien under §6321 has already attached, which means we get

8   priority for purposes of collection.  The Culps have said in

9   their brief that if they file a petition and it's accepted as

10  tolled, that the assessment should abate -- the Government is

11  going to lose priority.  Collections that have already begun

12  or have been concluded, what's going to happen with those?

13  Are they going to have to be reversed?  Are they going to have

14  to be suspended?  What happens if the case proceeds to a

15  decision in the Tax Court?  It is not all good for taxpayers.

16  The Government might get a new ten-year Statute of Limitations

17  to collect because our -- as soon as we assess, we get a fresh

18  ten-year Statute of Limitations to collect.

19          JUDGE SHWARTZ:  So if I could just -- just to make

20  sure I understand what you're saying, you're saying that if a

21  taxpayer after the deadline raises a challenge to the Notice

22  of Deficiency, the Government has already, because of their

23  non-challenge, has started the assessment process, in the

24  appropriate case, has started to levy its lien, et cetera.  So

25  that's what you're saying is all that process will be going on

1    and if six months, six years, sixteen years later somebody is

2    permitted to come in and seek to challenge the Notice of

3    Deficiency, it would require the unraveling of the collection

4    process and the assessment?

5         MR. ROSENBERG:  If the Culps are right that the

6    filing of a tolled petition is permissible, then our

7    assessment abates, we're going to lose our lien, we're going

8    to lose our priority, collections might have to be undone or

9    unwound and then redone.  The statutory --

10        JUDGE BIBAS:  Necessarily lose those things, or do

11   they just get put in suspension or abeyance until this is

12   resolved?

13        MR. ROSENBERG:  Well, if our lien is good, our lien

14   is good.  But if the assessment is abated, and then they get

15   to go all the way back to the beginning, go all the way back

16   to the Notice of Deficiency, and that lien is terminated, all

17   junior creditors are going to advance beyond -- ahead of the

18   Government, right.  Our statutory lien attaches effective the

19   date of the assessment, and if the assessment is undone, then

20   it's undone.  There's no answer for that.

21        JUDGE BIBAS:  Okay, well, that might be an argument

22   against cancelling the lien, but isn't it consistent with that

23   to allow the challenge of the assessment, and if ultimately

24   the challenge is upheld, then at that point we could deal with

25   undoing the lien, without rather doing it -- undoing it at the

1    front end.

2            MR. ROSENBERG:  Well, but all of these things are

3    automatic in the Statute.  So, stepping back, we're talking

4    about did -- is there something in the Statutes and the text

5    that shows that Congress intended for the deadline to be

6    tolled?  There are lots of reasons why not, not just with

7    respect to jurisdiction, but with tolling.

8            JUDGE BIBAS:  No, no, they don't need a clear

9    statement.  You need --

10           MR. ROSENBERG:  Right.

11           JUDGE BIBAS:  You need something.

12           MR. ROSENBERG:  Brockamp expressed some doubt

13   whether the Irwin presumption even applied in the tax context,

14   but went ahead anyway.  The deadlines here work just as

15   stringently as they should under 6511, right, because all of

16   our mechanisms for administrative relief hinge on assessment,

17   and assessment cannot occur until this deadline comes and

18   goes.  If the deadline can be --

19           JUDGE BIBAS:  But what if we held, okay, you've done

20   an assessment, you know, the lien -- you can't enforce on the

21   lien yet or anything else, but the lien will just stay there

22   until the -- you know, if the assessment ultimately gets

23   canceled out then at that point you have to undo it, but why

24   is it that necessarily -- you know, because the big

25   consequences you're pointing to here are if you lose all your

1  priority on your lien, as opposed to maybe you can't enforce

2  on it for some time.  So, how -- what would be the problem if

3  the lien were not invalidated at the front end, but just you

4  can't go and enforce and collect yet until --

5          JUDGE AMBRO:  It's determined.

6          JUDGE BIBAS:  -- it's been determined?

7          MR. ROSENBERG:  Right, there's no -- there wouldn't

8  be any problem with that in the same sense that we don't have

9  an assessment, we don't have a lien when a petition is timely

10 filed by -- within the deadline.

11         JUDGE AMBRO:  Right.

12         MR. ROSENBERG:  But I don't know what -- by what

13 authority the Court could say that the lien is somehow

14 preserved but the assessment is somehow abated.

15         JUDGE SHWARTZ:  Right.

16         MR. ROSENBERG:  Because those are tied by Statute,

17 right, and again, we're talking about did Congress leave room

18 in the --

19         JUDGE BIBAS:  Which provision of the Statute says

20 that the one can't -- has to be wiped out, like ab initio if

21 the other one goes, where?

22         MR. ROSENBERG:  Our statutory lien, 6322, says that

23 the date of the lien is effective the date of the assessment,

24 and 6321 prescribes when the lien comes, with notice and

25 demand for payment.  I see that my time is expired.

1      JUDGE SHWARTZ:  My colleagues I think have some

2  questions.  Go ahead.

3      JUDGE AMBRO:  Yes, this is an interesting case.  The

4  interesting thing is you've got a 17 to zip decision of the

5  Tax Court that 6213 is jurisdictional, 6213(a), and it -- when

6  I read through it, there's very little discussion of Boechler,

7  only toward the end.  It almost keeps hitting me, this is

8  perceived by the Tax Court as we've got a whole lot of work

9  and we don't need a whole lot more, and you're getting

10  pushback from the Supreme Court who's saying that these

11  provisions are written for the benefit of taxpayers and to be,

12  as one example, a day late or a few minutes late, too bad, you

13  lose, that's the way it is.  And it looks like it's a -- and

14  there's a perception, I think what I'm seeing in the Supreme

15  Court decision, that it's -- that just goes too far.

16      MR. ROSENBERG:  With respect to CDP.  But this is a

17  very different animal, and 7459(d) is incredibly important in

18  this context, and it --

19      JUDGE AMBRO:  But even Boechler -- did Boechler not

20  mention 6213(a) at one point?

21      MR. ROSENBERG:  It did, only with respect to the --

22  whether there was any persuasiveness to the long line of cases

23  interpreting 6213(a) as an argument in favor of a

24  jurisdictional reading of 6330(d).

25      JUDGE AMBRO:  I mean, what it looks like to me is

1    there was a retreat.  I mean, the Supreme Court in '04 in

2    <u>Kontrick v. Ryan</u>, and then in <u>Arbaugh</u> in '06 is saying, you

3    know, we ourselves have been kind of back and forth on

4    deadlines; henceforth a claims processing matter -- and you

5    may dispute whether this is a claims processing matter -- must

6    have a clear statement that it's jurisdictional.  And unless

7    it's really clear, we are not going to find -- we are going to

8    find that there is jurisdiction.  Isn't that correct?

9            MR. ROSENBERG:  Yes, Your Honor.  7459(d) --

10           JUDGE AMBRO:  And I can see the writing on the wall

11   with the Supreme Court.  How do we get around that?  I mean, I

12   realize that the Court tried in 42 pages of <u>Hallmark</u>, but it

13   looks to me like they're pushing water uphill.

14           MR. ROSENBERG:  Right.  7459(d) does not apply to

15   CDP.  It doesn't apply.  It does apply here.  If -- rather,

16   7459(d) does apply to CDP, but the consequences are very, very

17   grave when it comes to deficiency petitions, and it has always

18   been this way, at least since 1928.  A dismissal on non-

19   jurisdictional grounds is res judicata.  And it would be a

20   very perverse system for Congress to adopt, if it's supposed

21   to be very solicitous of taxpayers and protecting them, if

22   they mistakenly file a minute late or a day late, to enjoy

23   this extra remedy, or this prepayment remedy, and then cut off

24   all of the other prepayment remedies that Congress has made

25   available to them, and lose out on their actual due process

1    remedy of a refund suit.

2          JUDGE BIBAS:  I want to -- I just pulled up 6321 to

3    6322 and neither of them is super expressed, but 6322 says

4    "Unless another date is specifically fixed by law, the lien

5    imposed by 6321 shall arise at the time the assessment is

6    made."  You know, an assessment can be made, the right can

7    accrue, and a tolling requirement then just stops the clock or

8    pauses things during that.  There's nothing in this that says

9    the lien itself has to fall just because something is being

10   tolled.  So, I understand your concerns that we ought to

11   consider those, but it doesn't seem like it's necessary fatal

12   to the validity to those liens.

13         MR. ROSENBERG:  There's no Statute.  Again, the

14   question on Equitable Tolling is, is it clear from the

15   Statute, right.

16         JUDGE BIBAS:  Right.

17         MR. ROSENBERG:  Did Congress intend to leave room,

18   right?  So we have --

19         JUDGE BIBAS:  Is it clear from the Statute the

20   Congress didn't intend to leave room?

21         MR. ROSENBERG:  Okay, yes.  In the last sentence of

22   7421 in particular is a tolling provision that Congress

23   adopted: expressio unius.  If Congress wanted other equitable

24   grounds to be available to toll the deadline, they would have

25   left some room in the Statute.

1          JUDGE BIBAS:  Congress normally -- the Supreme Court

2    has repeatedly said we're not just supposed to be grading the

3    Congress' drafting.  They could have done it more clearly is

4    not enough to overcome this presumption.  But anyway, my time

5    is up.

6          JUDGE SHWARTZ:  I'd like to go back to just -- I'm

7    sorry, I do have two questions for you and then I'll see if my

8    colleagues have anything further.  6321, 6322, going back to

9    the consequences you were talking about.  You described that

10   the assessment comes to exist once the period to challenge a

11   Notice of Deficiency is expired, right?

12         MR. ROSENBERG:  Well, once that period comes and

13   goes, 6213(c) commands the Secretary to assess and demand and

14   collect.  And it says the tax shall be paid.  And then a

15   separate Statute gives the Secretary time to assess, or gives

16   the Secretary time to make the assessment and then to make a

17   demand for payment.

18         JUDGE SHWARTZ:  And I gather what your concern is,

19   the assessment goes on the books, a lien takes effect on

20   property for which collection can be sought, and as you're in

21   the lien process, in the collection process, then the taxpayer

22   comes back and challenges the Notice of Deficiency.

23         MR. ROSENBERG:  Yes.

24         JUDGE SHWARTZ:  Right?  And so your concern is there

25   would have to be a rewinding of the lien, would have to be

1    lifted because the assess -- if the Tax Court determines that

2    this now untimely petition becomes timely because the petition

3    has been equitably -- period -- the period has been equitably

4    tolled, by operation of 6213, everything gets undone?

5            MR. ROSENBERG:  It says any assessment or collection

6    during this blackout window is forboden and can be enjoined,

7    right?

8            JUDGE AMBRO:  That's collection, but that's not a

9    lien.

10           MR. ROSENBERG:  No, it says assessment, right,

11

12           JUDGE SHWARTZ:  Oh, even the assessment, you says

13   you can't assess, but what happens if you have assessed?

14           JUDGE AMBRO:  If you've already assessed.

15           MR. ROSENBERG:  Right.  And what the Culps have

16   argued in their reply brief is that if the petition is

17   accepted out of time based on tolling, the assessment abates,

18   it's a nullity.

19           JUDGE SHWARTZ:  So, it would -- so then because the

20   assessment is a condition precedent to having a lien --

21           MR. ROSENBERG:  Yes.

22           JUDGE SHWARTZ:  -- everything gets vacated.

23           MR. ROSENBERG:  Yes.

24           JUDGE SHWARTZ:  I see.

25           JUDGE BIBAS:  But what if the lien has already

1    validly been imposed?  It doesn't imply that the lien itself

2    becomes void at that point, only maybe it's voidable if they

3    succeed on the assessment challenge.

4            MR. ROSENBERG:  But every other creditor who is

5    junior to us on, you know, a house that is mortgaged to the

6    hilt is going to see that abate and they're going to step

7    forward, and any opportunity for the Government to get

8    recourse from a valuable piece of property, however --

9            JUDGE BIBAS:  But if you're a senior lienholder,

10   then you're protected against that.

11           MR. ROSENBERG:  Right --

12           JUDGE SHWARTZ:  But you're -- you say you're losing

13   priority,

14           MR. ROSENBERG:  That's right, we would lose priority

15   because the assessment is gone and that would theoretically

16   undermine --

17           JUDGE BIBAS:  It all depends on whether we

18   understand the assessments necessarily destroying a lien that

19   was attached earlier, or at what point the lien gets removed.

20   And I'd like to know if there is a statutory provision that

21   bears on what happens to that lien, but it's not obvious when

22   I just look at the Statutes here.

23           MR. ROSENBERG:  What is clear is that these are very

24   incisive questions for which there don't appear to be ready

25   answers.  And if Congress intended for this to be the

1    conversation, it would be more clear from the Statute that

2    this was a possibility.

3         JUDGE AMBRO:  Can I just make sure I understand what

4    the bidding is, here.  If you have a lien against me because I

5    am -- I have not paid all my taxes, when does that lien --

6    when does it come into play and when is it perfected against,

7    for example, my property?

8         MR. ROSENBERG:  Okay.  The lien comes into existence

9    when we make a Notice and Demand For Payment, which happens

10   after assessment.  The date that the lien is effective is the

11   date of assessment.  That's the combination of 6321 --

12        JUDGE AMBRO:  Date of assessment, okay.

13        MR. ROSENBERG:  -- and 6322.

14        JUDGE AMBRO:  And then so it's a lien against my

15   property, and if I try to sell my property, that lien is going

16   to be noted in the Recorder of Deeds Office, will it not?

17        MR. ROSENBERG:  It should be, but it's an automatic

18   lien.  So, to be good against other creditors, we would have

19   to file a Notice of Federal Tax Lien.  It's like a -- just

20   like in --

21        JUDGE AMBRO:  Yes, it would seem you'd have to do

22   that in the Recorder's Office because a deed searcher needs to

23   find that --

24        MR. ROSENBERG:  Yes.

25        JUDGE AMBRO:  -- in connection with the closing

1  statement.

2         MR. ROSENBERG:  Yes.  And our automatic lien is good

3  not only for property that exists at the time that the lien

4  comes into existence, but all future after-acquired property

5  by the taxpayer until the tax is paid, for the taxpayer's

6  life.  It's one --

7         JUDGE SHWARTZ:  Is this the anomalous result

8  <u>Hallmark</u> was trying to tell us what happened if the taxpayer

9  could equitably toll?

10        MR. ROSENBERG:  There are a number of anomalous

11 results.

12        JUDGE SHWARTZ:  Is this one of them?

13        MR. ROSENBERG:  This is an anomalous result, and

14 this is probably one of the most worrisome, because our

15 statutory lien is our most powerful administrative tool for

16 collection.  It is.  And that's why all of these deadlines are

17 structured in the way that they are, they are shall, shall,

18 shall, shall, shall.  And the question for Equitable Tolling

19 is, yes, there's the <u>Irwin</u> presumption, but we have it

20 repeatedly stated in the Statute throughout different

21 provisions, there are parts of 6213(a) that depend on this

22 deadline.  We have -- you know, it's repeated, it's

23 emphatically stated.  And it's not just this Statute that

24 depends on this deadline.  There are substantive tax

25 provisions that depend on this deadline.

1          JUDGE SHWARTZ:  All right, thank you, counsel.

2          MR. ROSENBERG:  Thank you, Your Honors.

3          MR. ROBERTS:  Your Honors, just a couple of remarks

4    going to the jurisdictional issue here.  I think one of the

5    most important things the Government just said was they just

6    conceded that if _Boechler_ applies here, they lose because they

7    have no clear statement.  And the only remaining thing that

8    they're hanging onto here is trying to distinguish _Boechler_

9    from our case by saying 6213(a) is not 6330(d)(1) like it was

10   in _Boechler_.  However, _Boechler_ gave us the analytical

11   framework to follow and apply here.

12         JUDGE SHWARTZ:  Do you have any response to your

13   adversary's commentary about the lien and the consequences, or

14   should we ask Mr. Fogg to join us back in the well to address

15   that point?

16         MR. ROBERTS:  I think Mr. Fogg would be the best

17   person to address that, and he definitely has a lot of

18   commentary to provide on that, which will be very --

19         JUDGE SHWARTZ:  You've got a big smile on your face.

20   So, Mr. Fogg, we are going to defy the rules and let you

21   rebut.

22      (Laughter)

23         JUDGE AMBRO:  I can pass the book.

24         MR. ROBERTS:  He's excited to come up, he's

25   whispering in my ear, "Let me know."  Yes, a lot of good

1   stuff.

2          JUDGE SHWARTZ:  I can see you're pretty excited

3   about it, too, so --

4          MR. ROBERTS:  A lot of good stuff.  Yes, to that

5   point the only thing that the Government has left is to

6   distinguish 6213(a) from 6330(d)(1).  I point the Court to a

7   line of cases, Venen, back in 1994.  This case addressed

8   §7433, and the Third Circuit held that this exhaustion

9   requirement of this section was in fact jurisdictional.  The

10  Supreme Court came in with Arbaugh in 2006, gave us an

11  analytical framework, and that evaluated a totally different

12  Statute, Title 7.  And then in Hassan v. Government of Virgin

13  Islands, authored by Judge Shwartz, the Court took that

14  framework from Arbaugh, applied it again as 7433 to overturn

15  Venen from 1994.  So, there is a clear history in this

16  jurisdictional realm where the Supreme Court gives a clear

17  analytical framework to overturn a Statute that may not be the

18  original Statute that the Third Circuit addressed.  So,

19  there's clear precedent on point here for you to use the

20  Boechler framework to overturn a prior precedent in this case.

21          JUDGE BIBAS:  We recognize that it has been

22  abrogated by intervening developments.

23          MR. ROBERTS:  Your Honor, I think the fact that

24  applying the analytical framework in itself, just that

25  principle of using that and being able to apply that is what's

1    important here.  And <u>Boechler</u> is clearly on point; there's a

2    long line of history 20 years, 12 cases applying this

3    framework, and there is no reason why 6213(a) should not get

4    the same treatment as that in <u>Boechler</u>.

5            JUDGE AMBRO:  We used to state it in the

6    transactional world very simply, the state of the art has

7    changed.

8            MR. ROBERTS:  What was that, Your Honor?

9            JUDGE AMBRO:  The state of the art has changed, in

10   effect.  I mean, the Court has taken a new direction.  It's a

11   pivot.

12           MR. ROBERTS:  Okay.

13           JUDGE SHWARTZ:  Well, thank you, counsel.

14           MR. ROBERTS:  Thank you.

15           JUDGE SHWARTZ:  Mr. Fogg, we're defying rules and

16   we're going to ask if you have any thoughts you can share with

17   us about the Government's explanation of the consequences of

18   allowing this Statute to be equitably tolled, specifically on

19   the assessment, the lien, et cetera.

20           MR. FOGG:  Yes, I think the Government confused what

21   happened here, because you don't even need to rule for the

22   Culps here for there to be the same problem.  Mr. Roberts

23   argued in this Court three years ago a case by the name of

24   <u>Gregory</u> in a situation that comes up regularly, not routinely,

25   but regularly in the Tax Court, where people don't get the

1    Notice of Deficiency, even though that -- the IRS sent it to
2    what was presumably their last known address.

3        So, the 90 days passes.  The Government can assess, the
4    Government does assess, it needs to assess because the Statute
5    of Limitations is running.  That's really what it has -- you
6    know, the 6213(c) is directing them to do what they must do in
7    order to preserve the Statute of Limitations.  So, they
8    assess.  Now in come the Gregory's in that case and say,
9    "Well, you didn't send the notice to our right -- to the right
10   place.  It was wrongly sent."  And the Third Circuit said, "We
11   agree with you, Gregory's."  This is happening now two or
12   three years after the sending of the Notice of Deficiency.
13   All that time the assessment is on the books, the lien -- the
14   statutory lien, I'm not sure about the Notice of Federal Tax
15   Lien, but the lien stays there.  Once this Court or the Tax
16   Court or whatever Court rules that's a bad Notice of
17   Deficiency, then, you know, then the tax is abated and the
18   lien comes off the books.  So, that's exactly what will happen
19   here.  So in my projection, 30 cases a year.

20           JUDGE AMBRO:  Or if it's modified, then the lien --
21   it gets noted as a lesser number.

22           MR. FOGG:  Yes.

23           JUDGE AMBRO:  For example.

24           MR. FOGG:  Yes, Your Honor.  But if a notice was
25   sent to the wrong address, it's simply an invalid notice.

1          JUDGE AMBRO:  Right, I got it.

2          MR. FOGG:  So the whole assessment is going to come

3     off.

4          JUDGE BIBAS:  This is an automatic sense, really.

5     At what point would there be recordation of the lien such that

6     other buyers, or purchasers, would have some idea that it's

7     here?

8          MR. FOGG:  No, that's up to the IRS, so their policy

9     is generally to file a Notice of Federal Tax Lien when you owe

10    more than $10,000, and that -- but that filing will normally

11    not occur until they go -- so once they make the assessment,

12    then they send Notice and Demand, and then they have three or

13    four other letters they send up to the CDP notice.  And it's

14    usually after that at some point, if you owe $10,000 or more

15    that they'll file.

16         JUDGE BIBAS:  But there's still going to be bona

17    fide purchasers in the intervening period who are going to

18    wind up being junior creditors without really knowing it.

19         JUDGE AMBRO:  No, no, not if they're BFP.

20         MR. FOGG:  No, no, they'll be senior creditors.

21         JUDGE BIBAS:  Oh, okay.

22         MR. FOGG:  They're senior creditors because the

23    lien, the assessment lien --

24         JUDGE SHWARTZ:  They jumped the line.

25         MR. FOGG:  -- is a secret lien.

1          JUDGE BIBAS:  Okay.

2          MR. FOGG:  So, in 6323(a) -- so that's the Statute

3   that gives you the who's going to win.  So, 6323(a) says there

4   are four people that are going to defeat the unfiled federal

5   tax lien.  So, purchasers would be one of those, holders of

6   mechanics' liens -- and that's not car dealers, that's

7   builders -- judgment lien creditors, and why am I blanking on

8   the fourth?  But anyway, there's four there and those people,

9   if they come in before the IRS lays down that Notice of

10  Federal Tax Lien, then they defeat -- they come ahead of the

11  Notice of Federal Tax Lien.

12         JUDGE AMBRO:  The old 9310 of the old UCC, as --

13         MR. FOGG:  There -- if --

14         JUDGE AMBRO:  I don't know what it is under the new

15  numbers.

16         MR. FOGG:  It relates -- it's the same kind of idea.

17  I mean, this was created in 1966 in the Federal Tax Lien Act.

18         JUDGE AMBRO:  Yes.

19         MR. FOGG:  And then you have 6323(b) that says

20  there's ten creditors who are going to defeat the federal tax

21  lien, even if it's been filed, because we need that to be able

22  to defeat it --

23         JUDGE SHWARTZ:  And then there's people in place of

24  priority in the bankruptcy and all of that, right?

25         MR. FOGG:  And if I could just talk about bankruptcy

1   for one moment –

2        JUDGE AMBRO:  Yay.

3        MR. FOGG:  -- because it responds to --

4        JUDGE SHWARTZ:  Oh, because it makes him so happy.

5        MR. FOGG:  I know Judge Ambro is a world expert, but

6   I want to respond to a question that was raised about what's

7   the meaning of the last sentence of 6323(a), does it -- does

8   that take away the Court's ability to give Equitable Tolling?

9   And the argument the Government is making here today is

10  interesting because it's the exact opposite of the argument

11  they made in a case by the name of Young vs. United States.

12  In that case the taxpayer filed a tax return and didn't pay,

13  made a few payments.  About a year and a half later goes into

14  Chapter 13, sits in Chapter 13 until the time period for

15  filing a priority claim in bankruptcy expires, which is three

16  years from the due date of the return.  Dismisses his Chapter

17  13, which he has the right to do, and immediately files a

18  Chapter 7.  Gets the discharge in Chapter 7 and says, "Hmm,

19  I've discharged my taxes because at the time I filed my

20  Chapter 7 they were more than three years old," so they

21  weren't entitled to priority under 507(a), and therefore they

22  weren't excepted from discharge under 523.  And the Government

23  said, "Well, that's not fair.  We should have a tolling.  We

24  should have Equitable Tolling of the time period that you were

25  in bankruptcy."  And the taxpayer says, "No, you shouldn't,"

43

1   because 507(a)(8)(A)(ii) {little i} has a specific provision

2   that says when there is an offer in compromise, you get a

3   tolling.  And they didn't mention prior bankruptcy cases.  And

4   so that was the taxpayer's response, exactly what the

5   Government is arguing today.  And the -- but then the Supreme

6   Court said "No, that doesn't keep us from granting Equitable

7   Tolling," and they gave the Government Equitable Tolling in

8   that case.  So, I'm very surprised the Government, having won

9   that case, would come in and make a similar argument here.

10  Anyway, but are there other questions that I can address?

11          JUDGE AMBRO:  No, this was very helpful.

12          JUDGE SHWARTZ:  Yes, I've been asked by my

13  colleagues to thank you for appearing as an Amicus, thank

14  counsel for their excellent arguments.  You can have a seat.

15  But we are going to ask counsel to split the cost of the

16  transcript of this argument, and so you can speak with our

17  crier today to make arrangements for that.  But we thank

18  counsel for their excellent arguments and their briefing and

19  we'll take the matter under advisement.

20      (Court adjourned)

21                    CERTIFICATION
22  I, Lewis Parham, certify that the foregoing is a correct
23  transcript from the electronic sound recording of the
24  proceedings in the above-entitled matter.
25
26
27  *Lewis Parham*                        3/17/23
28
29  _____      _____
30  Signature of Transcriber                Date