Docket No. 22-1789

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

ISOBEL BERRY CULP & DAVID CULP,

Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

On Appeal from the United States Tax Court (No. 14054-21)
Honorable Eunkyong Choi, Special Trial Judge

# ANSWER OF *AMICUS CURIAE* CENTER FOR TAXPAYER RIGHTS TO THE PETITION FOR REHEARING EN BANC

Audrey Patten, Esq.
*Counsel for Amicus*
Tax Clinic at
the Legal Services Center
of Harvard Law School
122 Boylston Street
Jamaica Plain, MA 02130
(617) 390-2550
apatten@law.harvard.edu

T. Keith Fogg, Esq.
*Counsel for Amicus*
Tax Clinic at
the Legal Services Center
of Harvard Law School
122 Boylston Street
Jamaica Plain, MA 02130
(617) 390-2532
kfogg@law.harvard.edu

Carlton M. Smith, Esq.
*Counsel for Amicus*
255 W. 23rd Street #4AW
New York, NY 10011
(646) 230-1776
carltonsmth@aol.com

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS……………………………………………………….. i

TABLE OF AUTHORITIES…………………………………………………... ii

ARGUMENT………………………………………………………………… 2

    New internal IRS statistics provided in the rehearing
    petition do not change the fact that far more taxpayers are
    hurt by a jurisdictional interpretation of the filing deadline
    than are helped………………………………………………………….. 2

CONCLUSION……………………………………………………………… 8

CERTIFICATE OF BAR MEMBERSHIP …………………………………..... 9

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS, AND
TYPE STYLE REQUIREMENTS..………………………………………….. 10

 CERTIFICATE OF SERVICE …………………………………….............. 11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Boechler, P.C. v. Commissioner*, 142 S. Ct. 1493 (2022) …………………... 1, 4-5

*Culp v. Commissioner*, 75 F.4th 196 (3d Cir. 2023) ………………………………. 7

*Flora v. United States*, 362 U.S. 145 (1960) ……………………………………... 6

*Hallmark Research Collective v. Commissioner*,
　159 T.C. No. 6 (Nov. 29, 2022) …………………………..……... 1, 4

*Jolly v. United States*, 2021 U.S. Claims LEXIS 930 (Fed. Cl. 2021),
　2023 U.S. Claims LEXIS 323 (Fed. Cl. 2023), and
　2023 U.S. Claims LEXIS 1978 (Fed. Cl. 2023) ……………………………… 6-7

*United States v. Dalm,* 494 U.S. 596 (1990) ……………………………………... 6

**STATUTES**

26 U.S.C. (I.R.C.):

　§ 6511 ………………………………………………………………………. 6

　§ 7422(a) …………………………………………………………………… 6

　§ 7459(d) ………………………………………………………………… 3, 6-7

　§ 7526(b)(1)(B)(i) ………………………………………………………... 5

**MISCELLANEOUS**

Brief for Respondent, *Boechler, P.C. v. Commissioner*,
   142 S. Ct. 1493 (2022), Supreme Court Docket No. 20-1472 ……………..... 4-5

FRAP 29(a)(4)(E) …………………………………………………………… 1

IRS Data Book 2020 …………………………………………………………… 3

# ARGUMENT[1]

**New internal IRS statistics provided in the rehearing petition do not change the fact that far more taxpayers are hurt by a jurisdictional interpretation of the filing deadline than are helped.**

*Amicus* is aware that appellants intend to address in their answer multiple issues raised in the petition for *en banc* rehearing. Accordingly, to avoid duplication, *amicus* in its answer focuses only on one other issue in the petition that is uniquely in *amicus*' purview and which *amicus* does not expect the appellants to address.

In a footnote on page 13 of the petition, the government, for the first time, challenges one estimate of the *amicus* concerning the numbers of dockets that might be affected by rulings one way or the other in this case. In the *amicus* brief (at 14-19), the *amicus* had explained how, by using the Tax Court's DAWSON order search function to review all orders to show cause issued by the Tax Court in certain months in 2021 and 2022 (prior to the issuance of *Boechler, P.C. v. Commissioner*, 142 S. Ct. 1493 (2022))[2] that raised a possible late-filing problem

---

[1] Pursuant to FRAP 29(a)(4)(E), this is to affirm that no party's counsel authored this answer in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting this answer. No person—other than the *amicus*, its members, or its counsel—contributed money that was intended to fund preparing or submitting this answer.

[2] Pre-*Boechler* months had to be used because, right after *Boechler*'s issuance in mid-April 2022, the Tax Court ceased issuing orders of dismissal in late-filed deficiency cases, pending the Tax Court's issuance of its opinion in *Hallmark Research Collective v. Commissioner*, 159 T.C. No. 6 (Nov. 29, 2022).

and reviewing what happened in those cases – i.e., whether or not the orders were made absolute – *amicus* estimated that, by holding the filing deadline jurisdictional, approximately 148 Tax Court cases are dismissed each year for late filing only because the Tax Court, compelled to police a jurisdictional filing deadline, brings late filing to the attention of the IRS (which had not noticed the late filing). If the deadline were not jurisdictional, the Tax Court would cease *sua sponte* issuing orders to show cause alerting the IRS to late filings. The *amicus* there also estimated that based on a review of each of the 103 orders of dismissal issued by the Tax Court in February and March 2022 (again, before *Boechler*) only about 30 times a year would taxpayers seek equitable tolling in deficiency cases (though mere assertions would not always mean getting equitable tolling). Assuming that half the taxpayers who would request equitable tolling would get it, then that means 163 taxpayers (148 plus half of 30) are hurt each year by holding the deficiency filing deadline jurisdictional. The government in this case has never challenged either of these estimates of taxpayers hurt annually by the jurisdictional interpretation of the petition filing deadline.

    The government has observed in its briefing that certain taxpayers would also be hurt by a nonjurisdictional holding as to the deficiency petition filing

deadline, since, under § 7459(d),[3] dismissal of a late-filed petition on nonjurisdictional grounds would appear to prevent by *res judicata* the taxpayer from subsequently paying the tax, filing a refund claim, and later bringing a refund suit in district court or the Court of Federal Claims.

In the absence of public statistics, *amicus* did an estimate of the number of district court and Court of Federal Claims refund suits brought after a Tax Court dismissal for lack of jurisdiction for late filing that generated published opinions. At page 15 of its brief, *amicus* first noted that only "188 refund suits were brought, under any circumstances, in the Court of Federal Claims and the district courts, combined, in the fiscal year ended September 30, 2020. IRS Data Book 2020 at 67 (Table 29). Obviously, not all those suits were brought by taxpayers who had previously filed late deficiency petitions in the Tax Court."

*Amicus* recognized that some refund suits would never generate published opinions, but *amicus* had no reason to think that refund suits that did not generate published opinions would involve the relevant fact pattern more or less frequently than suits that generated opinions.

At pp. 15-16 of its brief, *amicus* wrote:

> To search for the fact pattern in refund suit opinions, the undersigned did LEXIS searches encompassing all opinions issued on any date in 2021 using the search terms "refund and (Tax Court) and dismiss!". Those searches

---

[3] Unless otherwise indicated, all section references are to the Internal Revenue Code, Title 26.

> retrieved 29 district court opinions and 15 Court of Federal Claims opinions. None involved the fact pattern of the taxpayer previously having filed a late Tax Court deficiency suit that was dismissed for lack of jurisdiction and the subsequent full payment of the deficiency before a refund suit was brought. *Thus, it appears that taxpayers simply do not bring such refund suits.*
>
> The primary reason why no subsequent refund suits are brought, no doubt, is that so many Tax Court petitions are filed by pro se taxpayers who do not know their other tax procedure options. Secondly, very few taxpayers can afford or are willing to pay the full tax and sue for a refund.

Emphasis in original.

The government did not challenge this refund suit estimate of the Center in its briefing in the case, nor did the government challenge the identical information that the taxpayer in *Hallmark Research Collective v. Commissioner*, 159 T.C. No. 6 (Nov. 29, 2022), provided to the Tax Court that was derived from the Center's counsel's research. Only now – and the Center would argue too late – has the government raised a challenge to this estimate in its petition for rehearing. The petition states (at p. 13 n.3): "The Culps' amicus surmised that taxpayers almost never pursue refunds after the Tax Court dismisses their untimely deficiency petitions. (ECF No. 23 at 15-16.) But at least 55 taxpayers did just that between 2018 and September 2023, according to data available to the IRS."

*Amicus* has no way to challenge this unpublished IRS information. The government's belated and cavalier use of non-public data leaves both the Court and the other parties to the case stranded. The government engaged in a similar ploy at page 39 of its opening Supreme Court brief in *Boechler,* Supreme Court Docket

4

No. 20-1472. There, for the first time in the litigation, the government presented unpublished purported IRS data on how few taxpayers requesting Collection Due Process hearings at the IRS Independent Office of Appeals qualify as low-income taxpayers under the definition of § 7526(b)(1)(B)(i) (the definition used for purposes of federally-subsidized low-income taxpayer clinics – i.e., household income not exceeding 250% of the poverty level). However, later, by a letter filed on January 10, 2022 – i.e., two days before the Supreme Court oral argument – the Solicitor General informed the Court that the brief's figures were incorrect in that they understated the percentages of low-income taxpayers requesting such hearings. The Solicitor General provided substitute percentages with no explanation as to how they were derived. Neither the government's method in *Boechler* nor its method in this case is transparent; the government estimates cannot be independently verified, unlike *amicus*' estimates. Not only has the government submitted the statistical information in this case too late, but its manner of doing so is an affront to the system of justice.

However, the period from January 1, 2018, to September 30, 2023, comprises roughly 6 years. Thus, even accepting the IRS figures, this works out to only about 9 refund suits annually brought after the taxpayer's deficiency case was dismissed from the Tax Court for late filing – a figure that compares unfavorably to the estimate of 163 taxpayers hurt annually by a jurisdictional interpretation.

Moreover, the government may not be comparing apples to apples. In its footnote, the government merely says that taxpayers brought 55 refund suits after having been dismissed from the Tax Court for late filing. The government does not say how many of those refund suits were eventually dismissed for lack of jurisdiction because the taxpayers failed to meet 1 or more of the 3 requirements of refund suits that the courts currently call jurisdictional: (1) fully paying the deficiency before bringing suit; *Flora v. United States*, 362 U.S. 145 (1960); (2) filing a predicate administrative refund claim; § 7422(a); *United States v. Dalm*, 494 U.S. 596, 602 (1990); and (3) filing the administrative refund claim within the period set out in § 6511(a); *Dalm* at 602. What assurance can the government give this Court that its 55-case figure is that of 55 jurisdictionally-sufficient refund suits – the only kinds of refund suits for which *amicus* looked and that could be damaged by § 7459(d)'s interpretation? This Court should not be concerned about hurting taxpayers who do not file jurisdictionally-sufficient refund suits.

That *amicus*' question is serious is evident because at least one of such 55 refund suits likely was *Jolly v. United States*, 2021 U.S. Claims LEXIS 930 (Fed. Cl. 2021), 2023 U.S. Claims LEXIS 323 (Fed. Cl. 2023), and 2023 U.S. Claims LEXIS 1978 (Fed. Cl. 2023), where the Tax Court had dismissed a deficiency petition for 2017 for lack of jurisdiction for late filing. In the subsequent refund suit, the Court of Federal Claims both found that the taxpayer there had not fully

paid the tax and the IRS had properly never issued a 2017 notice of deficiency. Thus, the refund suit as to the 2017 year was jurisdictionally insufficient. Was *Jolly* one of the 55 refund suits? How many more refund suits were there that were never jurisdictionally sufficient to have been hurt by § 7459(d) if that provision would have created an additional *res judicata* bar?

    The panel in this case was correct in finding that any small number of refund suits brought after a Tax Court dismissal for late filing "therefore does not move the needle"; *Culp v. Commissioner*, 75 F.4th 196, 202 (3d Cir. 2023); in interpreting whether Congress made a clear statement showing that it intended the filing deadline to be jurisdictional.

## CONCLUSION

This Court should deny the petition for *en banc* rehearing.

Respectfully submitted,

/s/ Audrey Patten
Audrey Patten, Esq.
*Counsel for Amicus*
Tax Clinic at
the Legal Services Center
 of Harvard Law School
122 Boylston Street
Jamaica Plain, MA 02130
(617) 390-2550
apatten@law.harvard.edu

/s/ T. Keith Fogg
T. Keith Fogg, Esq.
*Counsel for Amicus*
Tax Clinic at
the Legal Service Center
of Harvard Law School
122 Boylston Street
Jamaica Plain, MA 02130
(617) 390-2532
kfogg@law.harvard.edu

/s/ Carlton M. Smith
Carlton M. Smith, Esq.
*Counsel for Amicus*
255 W. 23rd Street #4AW
New York, NY 10011
(646) 230-1776
carltonsmth@aol.com

Dated:  October 27, 2023

## CERTIFICATE OF BAR MEMBERSHIP

I hereby certify that all counsel for *amicus* are members of the bar of the United States Court of Appeals for the Third Circuit.

Dated:  October 27, 2023               Respectfully submitted,

                                       /s/ Carlton M. Smith
                                       Carlton M. Smith
                                       *Counsel for Amicus*

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This answer complies with the type-volume limitations of Federal Rules of Appellate Procedure 29(b)(4) because this answer contains 1,707 words, excluding the parts of the answer exempted by Federal Rule of Appellate Procedure 32(f).

2. This answer complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this answer has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14-point font.

Dated:  October 27, 2023                    Respectfully submitted,

                                            /s/ Carlton M. Smith
                                            Carlton M. Smith
                                            *Counsel for Amicus*

## CERTIFICATE OF SERVICE

This is to certify that copies of this answer were served on counsel for the parties on October 27, 2023, by filing a copy of this answer with the CM/ECF system, of which all counsel are participants.

Dated: October 27, 2023                     Respectfully submitted,

/s/ Carlton M. Smith
Carlton M. Smith
*Counsel for Amicus*