

**U.S. Department of Justice**

**Tax Division**

*Please reply to: Appellate Section*

Facsimile No. (202) 514-8456　　　　　　　　　　　　P.O. Box 502
Telephone No.(202) 514-3361　　　　　　　　　　　Washington, D.C. 20044

FMU:IBRosenberg
5-25058
CMN 2022100691　　　　　　　　　　　　　　November 6, 2023

*By CM/ECF*
Patricia S. Dodszuweit
Clerk, U.S. Court of Appeals for the
 Third Circuit
21400 United States Courthouse
601 Market Street
Philadelphia, PA  19106-1700

　　　　Re:　*Isobel Berry Culp et al. v. Commissioner*
　　　　　　　　(3d Cir. – No. 22-1789)

Dear Ms. Dodszuweit:

　　The Commissioner has petitioned the full court to vacate the panel opinion and rehear the above-captioned case.  Under FRAP 28(j), the Commissioner would like to apprise the Court of the Tax Court's recent decision in *Sanders v. Commissioner*, 161 T.C. No. 8 (Nov. 2, 2023).

　　In *Sanders*, by an 11-to-2 vote, the Tax Court reaffirmed its holding in *Hallmark Research Collective v. Commissioner*, 159 T.C. 126 (2022), that "the 90-day deadline in section 6213(a) for filing a petition in a deficiency case is jurisdictional."  (Op. 2 (footnote omitted).)  The panel opinion here neither mentions nor addresses the Tax Court's decision in *Hallmark Research*.

　　*Sanders* also conveys the Tax Court's direct response to the panel opinion.  Among other criticisms, the *Sanders* majority challenges the panel's narrow view of Section 6213(a)'s context, particularly when it comes to the consequences for taxpayers under I.R.C. § 7459(d) if the 90-day deadline is not jurisdictional.  (Op. 5-6.)  The *Sanders* majority further observes that the panel opinion "did not address" the prior-construction canon, which "involves deference to the legislative function and to Congress's presumed or expressed intention when . . . it leaves unchanged the statutory text that the courts have consistently construed."  (Op. 7; *see also* Op. 9-10 (Buch, J., concurring).)

-2-

In a separate concurrence, joined by nine judges, Judge Buch echoes the majority's points and adds others. He suggests that the panel may have been misled "to believe that the preclusive effect [of Section 7549(d)] is rarely implicated." (Op. 11; *see also* Op. 13.) He highlights other ways that taxpayers might be harmed if the petition deadline is not jurisdictional, *e.g.*, in audit reconsideration, administrative refund proceedings, bankruptcy, and collection-due-process proceedings. (Op. 12-14.) And he cautions that the panel's opinion—if widely adopted—could betray taxpayers' understandable belief, "on the basis of [the Tax Court's] low barriers to entry, that they have little to lose by filing a petition." (Op. 13.)

Judge Foley dissented, joined by Judge Weiler. (Op. 16-18.) His opinion parrots the panel opinion's textual analysis and concludes that "no further analysis is necessary." (Op. 18.)

Sincerely,

/s/ Isaac B. Rosenberg
ISAAC B. ROSENBERG
Attorney for the Commissioner

# United States Tax Court

161 T.C. No. 8

TIFFANY LASHUN SANDERS,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

———

Docket No. 15143-22.            Filed November 2, 2023.

———

R issued a notice of deficiency to P. P filed her Petition with this Court three days after the expiration of the 90-day period, as extended by I.R.C. § 7503, to file a petition disputing the notice of deficiency under I.R.C. § 6213(a). R moved to dismiss this case for lack of jurisdiction. Any appeal of our decision by P would presumptively lie in the U.S. Court of Appeals for the Fourth Circuit, which has not yet issued a precedential, published opinion as to whether the 90-day deadline in I.R.C. § 6213(a) is jurisdictional.

*Held*: The 90-day deadline for filing petitions with this Court in deficiency cases is jurisdictional.

*Held, further*, the Petition in this case was untimely filed, and we will dismiss the case for lack of jurisdiction.

———

Tiffany Lashun Sanders, pro se.

*Victoria E. Cvek* and *Nancy M. Gilmore*, for respondent.

**Served 11/02/23**

2

OPINION

NEGA, *Judge*: The sole issue for decision is whether the Court should alter its longstanding view that the 90-day deadline in section 6213(a)[1] for filing a petition in a deficiency case is jurisdictional in a case presumptively appealable to the U.S. Court of Appeals for the Fourth Circuit—a court that has not yet issued a precedential decision on the issue. We reaffirm our prior holding in *Hallmark Research Collective v. Commissioner*, 159 T.C. 126 (2022), and once again conclude that the 90-day deadline is jurisdictional.

*Background*

On March 21, 2022, respondent issued to petitioner a notice of deficiency for tax year 2018. The notice of deficiency indicated that the "[l]ast day to petition Tax Court" was June 21, 2022. Petitioner mailed a Petition to this Court via U.S. Postal Service (USPS) Priority Mail, disputing respondent's determination; the envelope containing the Petition bore a USPS postmark of June 23, 2022. The Petition was delivered to the Court on June 24, 2022. When the Petition was filed, petitioner resided in Maryland.

Respondent filed a Motion to Dismiss for Lack of Jurisdiction (Motion), on the grounds that the Petition was not timely filed within the 90-day period under section 6213(a). In his Motion, respondent represented that petitioner does not object to the granting of the Motion.

*Discussion*

I.   *Timeliness of the Petition*

Respondent has produced a USPS Form 3877, Firm Mailing Book For Accountable Mail, with a date stamp of March 21, 2022, petitioner's name and address, and a certified mailing number that matches the number on the notice of deficiency. Accordingly, we find that the notice of deficiency issued to petitioner was mailed to her last known address on March 21, 2022. Pursuant to section 6213(a), the 90-day period for petitioner to file a petition with this Court disputing the notice of deficiency expired on June 19, 2022. June 19, 2022, was a Sunday, and

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

3

the following Monday was a legal holiday, which meant that a petition mailed or filed by petitioner on June 21, 2022, would have been considered timely. *See* § 7503 (providing that, for deadlines falling on a Saturday, Sunday, or legal holiday, an act "shall be considered timely if it is performed on the next succeeding day which is not a Saturday, Sunday, or a legal holiday"); § 6213(a). Further, the notice of deficiency bears a "[l]ast day to petition Tax Court" date of June 21, 2022, which thus constituted a safe harbor for any mailing or filing of a petition on that date by petitioner. *See* § 6213(a) (last sentence). We find that June 21, 2022, was the last day on which petitioner could have timely mailed or filed a petition with this Court.

Under section 7502(a), a petition required to be filed within the 90-day period but delivered to the Court outside that period will generally, if (1) sent via USPS (or a designated delivery service) (2) in a properly addressed envelope (3) bearing a postmark date that falls within the 90-day period, be deemed to have been delivered to this Court (and thus filed) on the postmark date. *See Guralnik v. Commissioner*, 146 T.C. 230, 238 (2016); *see also Pond v. United States*, 69 F.4th 155, 162–63 (4th Cir. 2023); *Hull v. United States*, 146 F.3d 235, 239 (4th Cir. 1998). The envelope in which the Petition was conveyed via USPS Priority Mail to this Court bore a postmark of June 23, 2022, which means that section 7502(a) is inapplicable. *See* § 7502(a)(2); Treas. Reg. § 301.7502-1(a); *see also, e.g., Malekzad v. Commissioner*, 76 T.C. 963, 966 (1981) ("[T]o come within the terms of section 7502, the petition must have been timely mailed on or before the last date for filing."). Accordingly, the Petition was untimely filed with the Court on June 24, 2022, the date of delivery. *See, e.g., Nutt v. Commissioner*, No. 15959-22, 160 T.C., slip op. at 4 (May 2, 2023) ("Where section 7502 does not apply, 'we must look to the date the "petition" was actually received and filed by the Court to determine whether it was timely filed.'" (quoting *Cassell v. Commissioner*, 72 T.C. 313, 319 (1979))). We now turn to the question of what effect petitioner's untimely filing has upon our jurisdiction.

II.    *Jurisdiction*

We have an independent obligation to assure ourselves of our jurisdiction, regardless of the positions taken by the parties in a particular case. *See, e.g., Charlotte's Off. Boutique, Inc. v. Commissioner*, 121 T.C. 89, 102 (2003), *supplemented by* T.C. Memo. 2004-43, *aff'd*, 425 F.3d 1203 (9th Cir. 2005). This Court is a court of limited jurisdiction and may exercise jurisdiction only to the extent provided by Congress. *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985).

4

Almost a century ago, Congress created our predecessor, the Board of Tax Appeals (BTA), as a prepayment forum for taxpayers.  *See* Revenue Act of 1924, ch. 234, § 900(a), 43 Stat. 253, 336.  To challenge a deficiency determined by the Commissioner, a taxpayer was required to file an appeal with the BTA "[w]ithin 60 days after such notice [of deficiency] is mailed" or else "the deficiency of which the taxpayer has been notified shall be assessed."  *Id.* § 274(a), (c), 43 Stat. at 297.  From the start, the BTA characterized the deadline for disputing a notice of deficiency as jurisdictional, *see, e.g., Satovsky v. Commissioner*, 1 B.T.A. 22, 24 (1924), and appellate courts followed suit, *see, e.g., Edward Barron Estate Co. v. Commissioner*, 93 F.2d 751, 753–54 (9th Cir. 1937), *aff'g* 34 B.T.A. 1256 (1936); *Cont'l Petroleum Co. v. United States*, 87 F.2d 91, 94 (10th Cir. 1936); *Poynor v. Commissioner*, 81 F.2d 521, 522 (5th Cir. 1936); *Lewis-Hall Iron Works v. Blair*, 23 F.2d 972, 974 (D.C. Cir. 1928), *aff'g* 5 B.T.A. 1298 (1926).  Over the years, Congress has tinkered with the text and mechanics of what is now section 6213(a) (for instance, extending the original 60-day period to 90 days, *see* Revenue Act of 1934, ch. 277, § 501, 48 Stat. 680, 755) but has not amended the text so as to expressly disturb the courts' settled interpretation of the 90-day deadline as a jurisdictional requirement.  *See Hallmark*, 159 T.C. at 153–63 (tracing the history of section 6213 against the backdrop of judicial decisions interpreting the deficiency deadline as jurisdictional); *see also Organic Cannabis Found., LLC v. Commissioner*, 962 F.3d 1082, 1095 (9th Cir. 2020).

In recent years the Supreme Court has "endeavored 'to bring some discipline'" to the judicial treatment of procedural requirements as "jurisdictional."  *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 298 (2023) (quoting *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2022)).  That effort has taken the form of a clear statement substantive canon of construction, which directs that a statutory requirement should be interpreted as jurisdictional "only . . . if Congress 'clearly states' as much," by way of statutory text, context, and history.  *Id.* (quoting *Boechler, P.C. v. Commissioner*, 142 S. Ct. 1493, 1497 (2022)); *see United States v. Kwai Fun Wong*, 575 U.S. 402, 410 (2015) ("[T]raditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences."); *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153–54 (2013) ("We consider 'context, including this Court's interpretations of similar provisions in many years past,' as probative of whether Congress intended a particular provision to rank as jurisdictional." (quoting *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 168 (2010))).

5

In *Boechler, P.C. v. Commissioner*, 142 S. Ct. 1493 (2022), the Supreme Court considered section 6330(d)(1), which provides a 30-day period for filing a petition with this Court to dispute a collection due process notice of determination relating to a proposed levy. The Supreme Court held that the 30-day period was a nonjurisdictional claims processing rule, reasoning that the provision lacked any clear textual or contextual statement that the 30-day period was jurisdictional. *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1498, 1501.

In the wake of *Boechler* we revisited our longstanding precedents on the jurisdictional nature of the 90-day deadline in section 6213(a). In *Hallmark*, this Court reaffirmed those precedents and held, based on the text, context, and history of section 6213(a), that the 90-day deadline is jurisdictional. *See Hallmark*, 159 T.C. at 166. After canvassing nearly a century of applicable appellate precedents, the Court also noted that the U.S. Courts of Appeals for the First and Fourth Circuits had to date not issued published, precedential opinions expressly concluding that the 90-day deficiency deadline was or was not jurisdictional. *Id.* at 162 n.31.

More recently, the U.S. Court of Appeals for the Third Circuit has issued an opinion that is in direct conflict with *Hallmark*. In *Culp v. Commissioner*, 75 F.4th 196, 205 (3d Cir. 2023), the Third Circuit held that the 90-day deadline in section 6213(a) is nonjurisdictional. The Third Circuit reasoned that the text of that section lacks a clear link between the 90-day deadline and the Court's jurisdiction. *Culp v. Commissioner*, 75 F.4th at 201–02. The Third Circuit also found unconvincing the Commissioner's invocation of section 7459(d),[2] characterizing the possibility of dismissals for late filing having later preclusive effect in refund suits as a "theoretical possibility [that] seems seldom, if ever, to occur."[3] *Culp v. Commissioner*, 75 F.4th at 202. The

---

[2] Section 7459(d) provides that a nonjurisdictional dismissal of a deficiency case by this Court will generally be "the functional equivalent of a merits decision sustaining the determination of the deficiency." *Hallmark*, 159 T.C. at 144.

[3] Neither the parties nor *amicus* in *Culp* appear to have raised the (possibly more likely to occur) prospect that a nonjurisdictional late filing dismissal under section 7459(d) would also generally preclude a taxpayer from disputing a proof of claim by the Commissioner as to that tax year in a later bankruptcy proceeding. *See* 11 U.S.C. § 505(a)(2)(A); *Baker v. Internal Revenue Service* (*In re Baker*), 74 F.3d 906, 909 (9th Cir. 1996) ("A case not tried on the merits can nonetheless be 'adjudicated' within the meaning of [11 U.S.C. § 505(a)(2)(A)]."); *Allison v. United States* (*In re Allison*), 232 B.R. 195, 199, 202 (Bankr. D. Mont. 1998) (concluding that bankruptcy

6

Third Circuit also succinctly rejected "the Commissioner's argument that relevant historical treatment (that is, our precedent) compels us to treat § 6213(a)'s deadline as jurisdictional" by observing that "[t]his is the first published opinion to address squarely whether § 6213(a)'s deadline for redetermination petitions is jurisdictional, and we hold it is not." *Id.* Because it stated that the "relevant historical treatment" consists only of "our [Third Circuit] precedent," it seems that the Third Circuit considered stare decisis to be the doctrine underlying this argument and did not hold stare decisis to be applicable.[4]

The Tax Court does adhere to the doctrine of stare decisis and thus affords precedential weight to its prior reviewed and division opinions. *See Analog Devices, Inc. & Subs. v. Commissioner*, 147 T.C. 429, 443 (2016). Because of our nationwide jurisdiction, the Court takes seriously its obligation to facilitate uniformity in the tax law. *See Bankers Union Life Ins. Co. v. Commissioner*, 62 T.C. 661, 675 (1974). When one of our decisions is reversed by an appellate court, the Court will "thoroughly reconsider the problem in the light of the reasoning of the reversing appellate court and, if convinced thereby, . . . follow the higher court." *Lawrence v. Commissioner*, 27 T.C. 713, 716–17 (1957), *rev'd on other grounds*, 258 F.2d 562 (9th Cir. 1958); *see, e.g.*, *Tice v. Commissioner*, No. 24983-15, 160 T.C., slip op. at 10–11 (Apr. 10, 2023). But if the Court remains convinced that our original decision was right, the proper course is to "follow [our] own honest beliefs until the Supreme Court decides the point" and thus continue to apply our own precedent. *Lawrence*, 27 T.C. at 717–18. Our decision in *Golsen v. Commissioner*, 54 T.C. 742 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971), created "a narrow exception" to this approach. *Lardas v. Commissioner*, 99 T.C. 490, 494 (1992). In a given case, when a "squarely [o]n point" decision of the appellate court to which an appeal would lie contradicts our own precedent, we will follow the appellate court's decision. *Golsen*, 54 T.C. at 757. To do otherwise would be "futile and wasteful," given the

---

court lacked jurisdiction to redetermine liability for tax year for which Tax Court had previously issued nonjurisdictional dismissal); *In re Jackson*, 189 B.R. 206, 212 (Bankr. M.D. Ala. 1994) (observing that final decisions in Tax Court were res judicata in later bankruptcy proceeding, despite fact that some decisions "went against debtors *by default*").

[4] *See Nationwide Ins. Co. of Columbus, Ohio v. Patterson*, 953 F.2d 44, 46 (3d Cir. 1991) ("Ordinarily, a panel of this court is bound to follow the holdings of published opinions of prior panels *of this court* . . . ." (emphasis added)); 18 James Wm. Moore et al., *Moore's Federal Practice* § 134.02[1][c] (3d ed. 2023) ("The published decision of a panel of a court of appeals is a decision of the court and carries the weight of stare decisis.").

7

inevitable reversal by the appellate court. *Lardas*, 99 T.C. at 495. Where we are not constrained by precedent of the pertinent court of appeals, we follow stare decisis and apply our own precedent.

But stare decisis was not the principal ground for our decision in *Hallmark*—notwithstanding the impressive century of precedent. Rather, the principal ground of our decision was the "prior-construction canon," which is a principle distinct from stare decisis. *Hallmark* cited, inter alia, *Bragdon v. Abbott*, 524 U.S. 624, 645 (1998), which observed an "unwavering line of administrative and judicial interpretation" (which included no Supreme Court opinions) and held: "[W]hen administrative and judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its administrative and judicial interpretations as well." *Hallmark*, 159 T.C. at 154. Stare decisis involves deference to the judicial process and to court opinions per se; but the prior-construction canon—which the Third Circuit did not address in *Culp*—involves deference to the legislative function and to Congress's presumed or expressed intention when, in amending and reenacting a statute, it leaves unchanged the statutory text that the courts have consistently construed.

In *Hallmark*, 159 T.C. at 153–63, we chronicled over 70 years of legislation directly or indirectly affecting section 6213, after this Court and others had already held that provision or its predecessor to be jurisdictional. Even as recently as 2021, Congress continued to modify the Code with the understanding that section 6213(a) provided a jurisdictional time limit to file a petition. *See* Infrastructure Investment and Jobs Act, Pub. L. No. 117-58, § 80503, 135 Stat. 429, 1336 (2021). It was in that year that Congress amended section 7451 to add a new subsection (b), extending the deadline for petitions, and only petitions, if a filing location is inaccessible or otherwise unavailable. Section 7451(b)(1); *see also Sanders v. Commissioner*, No. 25868-22, 160 T.C., slip op. at 8–9 (June 20, 2023). The repeated congressional actions that were predicated on section 6213(a) providing a jurisdictional time limit for filing a petition counsel in favor of construing section 6213(a) to provide a jurisdictional deadline.

This case is presumptively appealable to the Fourth Circuit, *see* § 7482(b)(1), and thus the Third Circuit's opinion in *Culp* does not trigger application of the *Golsen* rule here. After thoroughly considering the Third Circuit's reasoning in *Culp*, we reaffirm *Hallmark* and will continue to treat the 90-day deficiency deadline as jurisdictional in cases

8

appealable outside the Third Circuit, including in cases appealable to the First and Fourth Circuits.  In *Hallmark* the Court comprehensively reviewed the text, context, and history of section 6213(a) and addressed the points later raised by the Third Circuit in reaching its conclusion in *Culp*.  Nothing in the Third Circuit's reasoning in *Culp* causes us to abandon or otherwise modify our application of the traditional tools of statutory construction or our holding as to the jurisdictional nature of the 90-day deficiency deadline.

With due respect for the differing views expressed in *Culp*, we continue to believe in the correctness of the conclusion we reached in *Hallmark*, which accords with an unbroken line of decisions reaching back to 1924.  We will grant respondent's Motion and dismiss this case for lack of jurisdiction.

To reflect the foregoing,

*An order of dismissal for lack of jurisdiction will be entered.*

Reviewed by the Court.

KERRIGAN, BUCH, PUGH, ASHFORD, URDA, COPELAND, TORO, GREAVES, and MARSHALL, *JJ*., agree with this opinion of the Court.

JONES, *J*., concurs in the result.

FOLEY and WEILER, *JJ*., dissent.

9

BUCH, *J.*, concurring: I agree with the opinion of the Court but write separately to respond to the dissent, which argues that the 90-day deadline of section 6213(a) is not jurisdictional. Citing *Boechler, P.C. v. Commissioner*, 142 S. Ct. 1493, 1499 (2022), the dissent maintains that the 90-day deadline of section 6213(a) does not satisfy the "clear-statement rule," under which "the jurisdictional condition must be just that: clear." But the dissent, relying on *Culp v. Commissioner*, 75 F.4th 196 (3d Cir. 2023), does not consider much of the information that the Supreme Court requires us to consider when determining whether Congress has made a clear statement.

The clear statement rule begins with the statutory text. But it doesn't end there. As the Court stated in *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 395 (1982)), "the jurisdictional analysis must focus on the 'legal character' of the requirement, . . . which we discerned by looking to the condition's text, context, and relevant historical treatment." *Accord Musacchio v. United States*, 577 U.S. 237, 246 (2016) (unanimous opinion) ("To determine whether Congress has made the necessary clear statement, we examine the 'text, context, and relevant historical treatment' . . . ." (quoting *Reed Elsevier*, 559 U.S. at 166)). For the petition filing deadline of section 6213(a), the text, context, and historical treatment all point to the jurisdictional nature of that deadline. We address each of these items in turn.

I.   *Statutory text*

The opinion of the Court, and the Court more extensively in our recent opinion in *Hallmark Research Collective v. Commissioner*, 159 T.C. 126, 153–54 (2022), sets forth the many textual indications demonstrating that this deadline is jurisdictional. But one point in particular warrants repeating: To evaluate the statutory text, one consults the traditional tools of statutory construction to see whether "Congress imbued a procedural bar with jurisdictional consequences." *United States v. Kwai Fun Wong*, 575 U.S. 402, 410 (2015). Or, as Justice Jackson recently put it, "'[t]raditional tools of statutory construction' can reveal a clear statement." *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 298 (2023) (quoting *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1497).

One such tool is the prior-construction canon. *See* op. Ct. p. 7. Using this tool, we must construe the text of section 6213(a) in the light of the 99-year history of congressional reenactments confirming

unanimous decisions of the courts of appeals. *See, e.g.*, *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 771 (1976) ("This justification for denying class-based relief in Title VII suits has been unanimously rejected by the courts of appeals, and Congress ratified that construction by the 1972 amendments."); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n.8 (1975) ("The Courts of Appeals that have confronted the issue are unanimous in recognizing that backpay may be awarded on a class basis under Title VII without exhaustion of administrative procedures by the unnamed class members. The Congress plainly ratified this construction of the Act in the course of enacting the Equal Employment Opportunity Act of 1972, Pub. L. 92-261, 86 Stat. 103." (citations omitted)). The prior-construction canon (addressed in neither the dissent nor *Culp*) is one of the principal points of our opinion in *Hallmark*, 159 T.C. at 153–54, which thoroughly recounts the reenactments of and amendments to section 6213(a). It was through those reenactments and amendments that Congress ratified the unanimous jurisdictional construction by this Court and the courts of appeals, all of which stated that the 90-day rule is a jurisdictional requirement to bringing a deficiency case in the Tax Court.

II.   *Jurisdictional context*

In determining whether the 90-day rule is jurisdictional, we are not confined to the first sentence of section 6213(a). Rather, we also consider its context within the Internal Revenue Code (not mentioned in the dissent and given short shrift in *Culp*). The relevant context plainly favors a jurisdictional interpretation.

   A.   *The fourth sentence of section 6213(a)*

The fourth sentence of section 6213(a) expressly addresses the Tax Court's jurisdiction. The dissent acknowledges this but discounts its significance because it "is removed from and not tied to the *90-day deadline* in the first sentence." *See* dissenting op. p. 17. For the reasons we stated in *Hallmark*, 159 T.C. at 141–42, this provision illuminates the jurisdictional character of the deadline in the first sentence. But the context of the 90-day deadline includes more than just that one section of the Code.

   B.   *The preclusive effect of section 7459(d)*

The context of section 6213(a) also includes section 7459(d), which we discussed in *Hallmark*, 159 T.C. at 143–53. This provision is not addressed in the dissent but is discussed in *Culp v. Commissioner*,

11

75 F.4th at 202, in which the Third Circuit (acknowledging the effect of section 7459(d)) observed that if the 90-day deadline "is not jurisdictional, and a taxpayer's redetermination petition is dismissed for untimeliness, [then] the assessed amount would have preclusive effect in a refund suit under 26 U.S.C. § 7422. *See* 26 U.S.C. § 7459(d)."

The Third Circuit discounted the significance of this statutory context because it had been led to believe that the preclusive effect is rarely implicated. Citing an amicus, it suggested that the preclusive effect of section 7459(d) is a mere "theoretical possibility [that] seems seldom, if ever, to occur, *see* Center for Taxpayer Rights Amicus Br. at 14–16, and therefore does not move the needle." *Culp v. Commissioner*, 75 F.4th at 202. But taking this narrow view of the preclusive effect of section 7459(d) is misplaced for at least two reasons: It is contrary to congressional action and it dramatically underrepresents the frequency with which the preclusive effect of section 7459(d) is implicated.

1.   *Congressional action*

The court's speculation in *Culp* about how often the statute may yield a potential outcome is not appropriate for analysis under the clear statement rule; our focus is more properly directed at the text Congress enacted. Four years after establishing the Board of Tax Appeals (our predecessor) and giving it jurisdiction to redetermine tax deficiencies when petitioned within 90 days of a notice of deficiency, Congress enacted section 7459(d) for the express purpose of preventing preclusion when a case was dismissed for lack of jurisdiction. *See* Revenue Act of 1928, ch. 852, § 601, 45 Stat. 791, 871–72. It did so in the light of the conspicuous jurisdictional dismissals of untimely petitions by the Board of Tax Appeals. *See Hallmark*, 159 T.C. at 148–53.

This interplay between sections 7459(d) and 6213(a) sheds light on the overall operation of the deficiency system that Congress constructed. Regardless of how many refund cases section 7459(d) preserves, it operates to give preclusive effect to Tax Court decisions only where the Tax Court has been given the power to adjudicate. If as a result of being untimely filed a case falls outside of the Tax Court's power to grant relief, Congress intended that taxpayers not be precluded from seeking relief elsewhere. In so doing, it characterized the relevant defect as a "lack of jurisdiction." § 7459(d).

12

### 2. *Instances other than denial of refund claims*

Moreover, the preclusive effect of section 7459(d) is implicated in far more than refund suits. *Culp* characterizes the preclusive effect as arising "only if a taxpayer files a late petition for redetermination of a deficiency, the Tax Court dismisses his or her petition, the taxpayer then pays the disputed deficiency, files for a refund, gets denied, and then sues in federal court challenging the denial." *Culp v. Commissioner*, 75 F.4th at 202. But there are at least three more common scenarios that the *Culp* opinion did not consider.

Before we discuss the specific scenarios, it is important to consider that, by design, barriers to entry to the Tax Court are low. Taxpayers represent themselves in roughly 80% of Tax Court cases. Even a corporation can represent itself through an authorized officer. Rule 24(b)(1)(B). The Tax Court hears cases in the taxpayer's locale, traveling to over 70 cities around the country, and allows for remote trials. A taxpayer's opposing counsel is a lawyer from a local office of the IRS Office of Chief Counsel, someone with whom the taxpayer may well have interacted during an administrative examination or appeal. The Tax Court's opinions and orders are all available to research for free online without creating an account. The fee to file a petition is $60.

By contrast, and in addition to the requirement to pay the liability in full, *see Flora v. United States*, 362 U.S. 145, 177 (1960), the barriers to a refund suit are significantly higher than those to a prepayment suit in the Tax Court. Tax cases brought in a federal district court are generally assigned to a Department of Justice lawyer in the Tax Division in Washington, DC. PACER, the online system that provides public access to records of most federal courts, requires a user to create an account and to pay to view opinions and orders. The fee to file a complaint in federal district court is more than five times that of the fee to file a petition in the Tax Court.

With these differences, it is unsurprising that, in fiscal year 2022, 98% of tax cases were brought in the Tax Court. Keith Fogg, *Where Have All the Judges Gone (and Other Information from the ABA May Meeting) Part 2*, Tax Notes (June 2, 2023), https://www.taxnotes.com/procedurally-taxing/where-have-all-judges-gone-and-other-information-aba-may-meeting-part-2/2023/06/02/7h637 (citing IRS Off. of Chief Couns., *FY 2023 Q2 Report to the American Bar Association*). Most of these cases are brought by individuals who are neither tax experts nor experienced litigators, appearing without the benefit of representation.

One can understand such individual's believing, on the basis of our Court's low barriers to entry, that they have little to lose by filing a petition, just as Congress intended.

The jurisdictional text in section 7459(d) is the mechanism Congress chose to protect these individuals. It ensures that those who file an untimely petition with the Tax Court, and thus have their petitions dismissed for lack of jurisdiction without a hearing on the merits, still have options available to them for resolving their disputes with the IRS. Only one of those options is a refund suit and, as noted above, the other scenarios are considerably more common.

The first and most likely scenario is audit reconsideration. The amicus brought the paucity of refund suits to the attention of the Third Circuit. But unlike refund suits, which necessitate the taxpayer's having paid the liability in full, audit reconsideration is available when the liability remains unpaid. *See Internal Revenue Manual* (IRM) 4.13.1.2(1) (Dec. 16, 2015) ("An audit reconsideration is the process the IRS uses to reevaluate the results of a prior audit where additional tax was assessed and remains unpaid . . . ."). If the dismissal of untimely petitions is not treated as jurisdictional, however, the taxpayer who files an untimely petition would be precluded from audit reconsideration. This is because the IRM instructs that audit reconsideration is barred by a final decision other than a dismissal for lack of jurisdiction. *See* IRM 4.13.1.8(1) (Dec. 16, 2015) ("A request for reconsideration will not be considered if . . . the United States Tax Court has entered a decision that has become final . . . . A case dismissed by a court for lack of jurisdiction can be reconsidered if the conditions for acceptance are met."); *see also* IRM 4.119.4.24.1(3)(b.) (Aug. 26, 2021) ("If the decision indicates that the case was closed with **finality** (**including dismissals for lack of prosecution**), issue Letter 916C to the taxpayer denying the reconsideration.").

The dismissal of untimely petitions for lack of jurisdiction allows taxpayers to seek audit reconsideration by the IRS only because the preclusive effect of section 7459(d) does not apply. If an untimely petition is dismissed for lack of jurisdiction, then no Tax Court decision precludes the taxpayer's requesting audit reconsideration. But if the petition is disposed of by a preclusive decision (as would occur if the section 6213(a) petition period is not treated as jurisdictional), then the liability will have been conclusively determined.

14

In those instances in which someone is able to pay the liability and seek a refund, a second scenario arises: the refund's being granted at the administrative level. The amicus did not direct the Third Circuit to data on how many refund claims are granted. This would arise in instances in which, after the jurisdictional dismissal of a deficiency case, the taxpayer pays the liability, and the IRS entertains a refund claim and grants a refund. The granting of a refund after dismissal is made possible by the "lack of jurisdiction" exception in section 7459(d). It is precisely because the Tax Court and the IRS have treated the 90-day deadline as jurisdictional that such a refund might be granted.[1] And a refund suit can only arise after an administrative refund is requested and denied.

The third scenario is bankruptcy, where the preclusive effect of section 7459(d) can prevent taxpayers from disputing tax liabilities. *See* op. Ct. p. 5 & n.3.

While highlighting the relatively few refund suits that are filed, the amicus in *Culp* failed to present the court with the far-reaching consequences of treating the deadline for filing a petition as nonjurisdictional. To combine the scenarios set forth above, any taxpayer who files an untimely petition and is found ineligible for equitable tolling would be precluded from not only a refund suit, but also from audit reconsideration, from receiving an administrative refund, and from challenging the liability in bankruptcy. Treating the petition filing deadline as nonjurisdictional would prevent or deter far more taxpayers from disputing their tax liabilities than the amicus suggested. And recognizing that section 6213(a) is jurisdictional, Congress adopted section 7459(d) specifically to prevent this outcome.

---

[1] As an aside, it is worth noting that those taxpayers who cannot pay their liability would likely be precluded from challenging that liability when the IRS undertakes to collect it. In 1998, Congress added sections 6320 and 6330 to the Internal Revenue Code to provide taxpayers the right to challenge IRS collection actions in the Tax Court. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206 § 3401, 112 Stat. 685, 746. In creating this new right, Congress also enabled taxpayers to challenge the underlying liability, but only if they "did not otherwise have an opportunity to dispute such tax liability." § 6330(c)(2)(B). Having received a notice of deficiency, the taxpayer who files an untimely petition cannot later challenge the liability in a collection case. While this is true even with a jurisdictional dismissal, a jurisdictional dismissal leaves open other avenues such as audit reconsideration and refund claims.

15

III. *Historical treatment*

In discerning whether the 90-day petition period is a jurisdictional limit, courts must consider the relevant historical treatment of this provision. As previously discussed, the prior construction canon requires that a court interpret the text of the statute in the light of the 99-year history of judicial precedent and congressional reenactment of section 6213(a). But even if one skips the prior construction, one must confront the relevant historical treatment of the statute. Having addressed that history both above and extensively in *Hallmark*, 159 T.C. at 168–83, we need not repeat it here. But we note that the precedent is relevant both to interpret the text under the prior construction canon and when considering the relevant historical treatment of section 6213(a). When properly considered, this precedential treatment does not allow us to confine ourselves to the words and grammar of the first sentence of the statute in isolation. We must also consider the long history of the courts—unanimous until the Third Circuit's opinion in *Culp*—construing it as jurisdictional. In confining itself to the words and grammar of the first sentence, the dissent does not properly apply the clear statement rule.

IV. *Conclusion*

The clear statement rule, as articulated by the Supreme Court, requires an analysis of text, context, and relevant historical treatment of section 6213(a). And an analysis of the text requires that we consider the prior construction of the statute. Properly applying the clear statement rule demonstrates that the section 6213(a) 90-day deadline is a jurisdictional requirement to maintaining a deficiency case in the Tax Court.

KERRIGAN, NEGA, PUGH, ASHFORD, URDA, COPELAND, TORO, GREAVES, and MARSHALL, *JJ.*, agree with this concurring opinion.

16

FOLEY, *J.*, dissenting: In *Hallmark Research Collective v. Commissioner*, 159 T.C. 126 (2022), I was restrained by precedent of the U.S. Court of Appeals for the Ninth Circuit that section 6213(a) is jurisdictional. *See Golsen v. Commissioner*, 54 T.C. 742, 757 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971); *see also Organic Cannabis Found., LLC v. Commissioner*, 962 F.3d 1082, 1092 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2596 (2021). I have no such restraint here.

The Supreme Court has held that a procedural requirement is jurisdictional "only if Congress 'clearly states' that it is." *Boechler, P.C. v. Commissioner*, 142 S. Ct. 1493, 1497 (2022) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006)). For a filing deadline to be jurisdictional, the statute must have a "clear tie between the deadline and the jurisdictional grant." *Id.* at 1499. In *Boechler* the Supreme Court held that the statutory language in section 6330(d)(1) failed to clearly state that the 30-day deadline to file a petition in collection due process determination cases is jurisdictional. *Id.* at 1498–99. Section 6330(d)(1) provides:

> The person may, within 30 days of a determination under this section, petition the Tax Court for review of such determination (and the Tax Court shall have jurisdiction with respect to such matter).

The Court concluded that this statutory language was subject to multiple plausible interpretations and that the statute did not clearly mandate a jurisdictional requirement. *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1498. Moreover, despite its proximity, the jurisdictional language in the parenthetical was not clearly tied to the deadline in the first independent clause of the sentence. *See id.* at 1499 (stating that a deadline "does not become jurisdictional simply because it is placed in a section of a statute that also contains jurisdictional provisions" (quoting *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 155 (2013)).

Section 6213(a) is not jurisdictional because the statutory language is subject to multiple plausible interpretations. In *Culp v. Commissioner*, 75 F.4th 196, 198, 205 (3d. Cir. 2023), the Third Circuit held that the text of section 6213(a) does not "clearly state" that the 90-day period is jurisdictional. In analyzing section 6213(a), the Third Circuit noted that the same jurisdictional language identified by the Supreme Court in *Boechler* does not appear in the first sentence of section 6213(a). *See id.* at 201–02. The first sentence of section 6213(a) provides:

17

> Within 90 days, or 150 days if the notice is addressed to a person outside the United States, after the notice of deficiency . . . is mailed . . . the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency.

The only jurisdictional language of section 6213(a) appears in the fourth sentence, which provides:

> The Tax Court shall have no jurisdiction to enjoin any action or proceeding or order any refund under this subsection unless a timely petition for a redetermination of the deficiency has been filed and then only in respect of the deficiency that is the subject of such petition.

Although the jurisdictional language in the fourth sentence is emphatic and clear as to the *grant* of jurisdiction, it is removed from and not tied to the *90-day deadline* in the first sentence. *See Culp v. Commissioner*, 75 F.4th at 202. Furthermore, the Third Circuit observed that "Congress knew how to limit the scope of the Tax Court's jurisdiction" given the language in the fourth sentence, "[b]ut it did not similarly limit the Tax Court's power to review untimely redetermination petitions." *Id.* "If the 6330(d)(1) deadline in *Boechler* fell short of being jurisdictional, § 6213(a)'s limit must as well." *Id.* at 201–02.

Given section 6213(a)'s failure to clearly set forth a jurisdictional requirement, the opinion of the Court and the concurring opinion are compelled to rely heavily on the prior construction canon and historical treatment of the statute. While "'[t]raditional tools of statutory construction' can reveal a clear statement . . . *the statement must indeed be clear*; it is insufficient that a jurisdictional reading is 'plausible,' or even 'better,' than nonjurisdictional alternatives." *See MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 298 (2023) (emphasis added) (quoting *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1497, 1499). Note also that most of the historical treatment of section 6213(a) predates *Boechler* and the Supreme Court's efforts to "bring some discipline" to the jurisdictional label. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). Further note that if Congress determines that there is a problem with the language it enacted, Congress can fix it.

In short, section 6213(a) fails the jurisdictional test. To reach a contrary result, the opinion of the Court and the concurring opinion must jump through a series of analytical and interpretative hoops.

18

I, however, am not a gymnast, and I am certainly not a synchronized swimmer. "To satisfy the clear-statement rule, the jurisdictional condition must be just that: clear." *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1499. The jurisdictional condition in section 6213(a) is not.

No further analysis is necessary.

WEILER, *J.*, agrees with this dissent.